ANNA LISETZA, Respondent, v FRANK H. LISETZA, Appellant.

Third Department, January 14, 1988

## APPEARANCES OF COUNSEL

*Kantrowitz & Goldhamer, P. C. (Amy Baldwin Littman* and *Paul B. Goldhamer* of counsel), for appellant.

*Kalter & Kaplan (Richard J. Kaplan* and *Ivan Kalter* of counsel), for respondent.

## OPINION OF THE COURT

Levine, J.

Plaintiff and defendant were married, each for the second time, in 1978. This divorce action was commenced some six years later. There were no children from the marriage and plaintiff's children from her prior marriage had fully attained majority and were self-supporting. At the time of the marriage, plaintiff owned a 23.8-acre undeveloped parcel, and a 5.2-acre parcel and dwelling in Woodbourne, Sullivan County, which she had inherited upon the death of her first husband in 1977. She had also received some $35,000 in cash at her husband's death, which was expended in the early years of the

parties' marriage. Some six months after the parties married, plaintiff received a gift from her mother of a house in East Elmhurst, Queens County. This property was sold by plaintiff for $72,000 and the proceeds invested in interest-bearing securities. When the parties married, defendant owned a residence on Bouck Avenue, Bronx County, and a leasehold proprietorship of a Mobil gas service station in Bronx County. He also owned unimproved land in New Jersey and two five-acre parcels of land in Colorado, one purchased in 1967 and the other in 1974. The service station was sold by him in 1981 for $60,000 following several years of operating losses. In 1978 the parties purchased a marital residence in Bayside, Queens County, for $55,000. The $20,000 down payment was made from premarital funds of defendant. After the sale of the Mobil station, defendant and plaintiff moved to plaintiff's home in Woodbourne. Defendant took a machinist position with a hardware company in a nearby community. They sold the Bayside residence to one of plaintiff's sons for $73,000, of which, under the contract of sale, the first $15,000 went directly to plaintiff and the net balance was to be paid to the parties jointly.

The parties separated in late 1983 and this divorce action was commenced by plaintiff in January 1984, in which she requested an award of maintenance, equitable distribution of marital property and counsel fees. Defendant withdrew his answer and did not contest the divorce. The parties also stipulated that plaintiff's two parcels in Woodbourne and the $72,000 proceeds of the sale of her house in East Elmhurst were her separate property, and that defendant's Bouck Avenue house in Bronx County, land in New Jersey and his individual retirement accounts set up after the divorce action was started were his separate property.

Following a trial of the remaining disputed financial issues, Supreme Court rendered a decision disposing of those issues as follows. Plaintiff was awarded maintenance of $75 per week for an indeterminate period to end at her death or remarriage. Plaintiff was also awarded one of the two parcels of land in Colorado. Defendant was granted the entire proceeds of the sale of the service station and the entire interest in his pension plan with his employer. Plaintiff was permitted to retain the entire $15,000 received solely by her from the sale of the Bayside residence, with the balance divided equally between the parties. The court denied defendant's request for a share in the appreciation in the value of plaintiff's Wood-

bourne properties, but was given a $500 credit for the value of certain improvements he made to the home on the 5.2-acre parcel. The court also rejected defendant's claim that plaintiff share in his debts of some $10,000. Counsel fees were awarded to plaintiff in the sum of $2,500 and witness fees of $500. This appeal by defendant ensued.

In our view, the disposition of the financial issues by Supreme Court was proper in all but two respects. As to the maintenance award, the evidence established plaintiff's needs of some $395 a week. She was 56 years old and afflicted with a hyperthyroid condition, bacterial endocarditis, arrhythmia and phlebitis, which disabled her from employment. Her interest income on the investment of the proceeds of the sale of the East Elmhurst property was approximately $500 per month. Even taking into account the potential income upon disposition of both Woodbourne properties, the net proceeds of sale of which, according to the evidence, would aggregate about $65,000, the maintenance award would still be inadequate to meet her entire needs. Plaintiff and her family materially assisted defendant in the preservation of his service station through its difficult financial times and before its sale. She received no distributive share of the proceeds of that sale. Defendant could expect an annual income from his employment of about $21,500 and annual net rental income from the Bouck Avenue property of some $2,500. Given the foregoing circumstances, there is no reason to disturb a permanent award of maintenance as fixed by Supreme Court, despite the relatively short duration of the marriage (see, Wilbur v Wilbur, 116 AD2d 953, 954-955). The court was authorized to award maintenance retroactively to the commencement of the action, since the complaint contains an application for maintenance (Domestic Relations Law § 236 [B] [6] [a]; see, Harness v Harness, 99 AD2d 658).

We also find no reason to disturb Supreme Court's refusal to award defendant a share of the $15,000 which plaintiff received separately from the sale of the Bayside residence to her son, as part of the total sales proceeds of $73,000. The evidence supports Supreme Court's finding that the parties had agreed to this allocation at the time of sale. As conceded by defendant, he and plaintiff's son had initially arrived at a complete understanding that the purchase price would be $58,000. Then plaintiff insisted that the property was worth more and reached an independent agreement with her son for the separate payment to her of the additional $15,000

"for her old age". At the time, defendant disclaimed any interest in those negotiations, as a matter strictly between mother and son. The executory contract of sale drawn by the parties' attorney reflected this arrangement. Literally and technically, the entire $73,000, "acquired by either or both spouses during the marriage" was marital property (Domestic Relations Law § 236 [B] [1] [c]) and, hence, Supreme Court erred in characterizing the $15,000 portion thereof as the separate property of the wife. Nonetheless, under the foregoing circumstances, it was fair and equitable to provide for, in effect, a disproportionate allocation of spousal shares in the proceeds of the sale reflected in permitting the wife to retain the first $15,000 of the proceeds, in accordance with the parties' own understanding (see, Sementilli v Sementilli, 102 AD2d 78, 88-90; Hebron v Hebron, 116 Misc 2d 803, 806-807).

■ We also agree with Supreme Court's refusal to constitute as marital property the postmarital appreciation value of plaintiff's Woodbourne property. The worth of defendant's personal loan in enhancing the value of the Woodbourne dwelling was relatively insignificant and he was given appropriate credit therefor in the award. As the trier of the fact, it was within Supreme Court's province to reject the credibility of defendant's claims as to financial contributions in maintaining the properties. Apart from the foregoing factors, there is nothing in the record to establish more than an appreciation in the "passive" separate properties, reflecting the general upturn in the real estate market, in which defendant was not entitled to share (see, Price v Price, 113 AD2d 299, 307, affd 69 NY2d 8; Conner v Conner, 97 AD2d 88, 99, n 4). Nor did the court err in concluding that defendant failed to sustain his burden to prove that his debts reflected marital obligations (see, Reiner v Reiner, 100 AD2d 872, 874-875). It was also within the court's discretion to direct defendant to pay a portion of plaintiff's counsel fees, given their respective financial circumstances (see, Foxx v Foxx, 114 AD2d 605, 607; Walsh v Walsh, 92 AD2d 345, 347).

■ Remittal, however, is required as to two aspects of the equitable distribution award. First, Supreme Court's award does not expressly account for the undisputed evidence that defendant contributed $20,000 of premarital funds to the purchase in joint names of the Bayside residence. No reason was advanced in Supreme Court's decision why defendant should not have been given a credit for this contribution of separate property (see, Cunningham v Cunningham, 105 AD2d

997, 998). Second, the Colorado properties were acquired by defendant prior to the marriage. Thereafter, they were conveyed into joint names. Supreme Court treated both parcels as marital property and directed an equal combined division thereof by allocating one parcel to each spouse. Supreme Court was correct in concluding that the postmarital conveyance of the parcels into jointly held title converted them to marital property (see, Coffey v Coffey, 119 AD2d 620, 622; Parsons v Parsons, 101 AD2d 1017). However, in its decision, Supreme Court did not dispose of defendant's claim that a constructive trust should have been imposed on plaintiff's interest. Moreover, even if that claim is rejected, the decision again fails to account for the credit to which defendant was entitled for the contribution of his separate property (see, Parsons v Parsons, supra, at 1018). Consequently, remittal is required for Supreme Court's resolution of these outstanding issues and a redetermination of an appropriate award.

KANE, J. P., CASEY and YESAWICH, JR., JJ., concur.

Judgment reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision.