HARRIET MARCUS, Respondent-Appellant, v HAROLD MARCUS et al., Appellants-Respondents.

Second Department, May 26, 1988

132

APPEARANCES OF COUNSEL

*Paul Martin Weltz* for appellants-respondents.

*Golden, Wienshienk & Mandel (Philip Mandel, Bernard Rothman* and *Marc Owen Mandel* of counsel), for respondent-appellant.

### REPUBLISHED OPINION OF THE COURT

MOLLEN, P. J.

The instant appeal and cross appeal present several challenges to the trial court's resolution of the equitable distribution of the marital assets of the plaintiff wife and the defendant husband, including the trial court's categorization, valuation and ultimate distribution of those assets. Since the portions of the judgment which have been appealed from do not affect Elizabeth Atwood Metz, her appeal is dismissed on the ground that she is not aggrieved thereby *(see,* CPLR 5511). For the reasons that follow, we modify the judgment from which the parties appeal.

The record reveals that immediately following their marriage in Chicago in 1948, the plaintiff was employed as a full-time social worker and contributed her earnings to the marital household while the defendant husband (hereinafter the defendant) attended medical school. The defendant graduated in 1950 and eventually built up a successful private psychiatric practice in New York. He also became an avid and knowledgeable investor and acquired many lucrative investments. The plaintiff ceased working in 1951 following the birth of the first of their three children, and thereafter devoted herself to taking care of the children, maintaining the household, and socially entertaining the defendant's business associates and colleagues. The plaintiff engaged in part-time employment infrequently during the marriage and at the time of trial was studying to obtain a certificate in psychoanalytic therapy.

The marital relationship began to deteriorate in the late

1970's, when the defendant and a former patient began to see each other socially and subsequently developed an intimate relationship. On July 18, 1980, the day preceding the effective date of equitable distribution in New York, while still living in the marital residence with the plaintiff, the defendant commenced an action for divorce by service of a summons. That action, however, was dismissed in October 1980 for failure to serve a complaint. The defendant suffered a heart attack in September 1980 and returned to the marital residence and to the care of the plaintiff following his release from the hospital, but continued the extramarital relationship with his former patient. He also continued to practice psychiatry on an allegedly reduced schedule, although his earnings from his practice steadily increased. The marital problems continued, and the plaintiff commenced the present divorce action on January 8, 1982. After a lengthy trial in the Supreme Court, Westchester County, the court granted a divorce to the plaintiff and distributed the marital assets. This distribution forms the basis for the appeal and cross appeal from stated portions of the judgment of divorce.

In the first instance, both parties challenge the propriety of the trial court's over-all distribution of the marital assets. Under the facts of this case, we find the distribution to be appropriate. It is well settled that the Equitable Distribution Law contemplates—precisely as denoted—an equitable distribution of the marital property (see, *Kobylack v Kobylack,* 111 AD2d 221; *Sementilli v Sementilli,* 102 AD2d 78; *Ackley v Ackley,* 100 AD2d 153, *lv dismissed* 63 NY2d 605, 772). The record demonstrates that while the defendant is responsible for the major share of economic contributions to the marriage, the plaintiff's comparatively small financial contributions were significant because they were made early in the marriage and helped enable the defendant to pursue a medical education and career. Moreover, her noneconomic contributions as a full-time parent, spouse and homemaker were also substantial throughout the parties' lengthy marriage. Hence, in view of their respective contributions to the lengthy marital partnership, we discern no error in the over-all percentage distributions by the court (see, Domestic Relations Law § 236 [B] [5] [d] [6]; *see generally, Neumark v Neumark,* 120 AD2d 502, *lv dismissed* 69 NY2d 899; *Griffin v Griffin,* 115 AD2d 587).

The defendant also argues that the trial court erred in failing to treat the date upon which he commenced his divorce

action (i.e., July 18, 1980) as the cut-off date for identifying and classifying the parties' assets for purposes of equitable distribution as opposed to the date of the commencement of the instant action which was utilized by the trial court. In support of his position, the defendant relies upon a literal reading of Domestic Relations Law § 236 (B) (1) (c) which defines the term "marital property" as "all property acquired by either or both spouses during the marriage and before the * * * commencement of *a* matrimonial action" (emphasis supplied). The defendant therefore claims that his interest in his residence at Wilmot Road in New Rochelle, his half interest in a Manhattan cooperative office and an investment account at Sanford C. Bernstein & Co., all of which he acquired subsequent to the commencement of the first action, should have been deemed separate property not subject to equitable distribution. We disagree.

The defendant admitted at trial that he served a summons on the plaintiff on July 18, 1980, solely for the purpose of avoiding the application of the Equitable Distribution Law which became effective the following day, July 19, 1980 (Domestic Relations Law § 236). However, the defendant failed to serve a complaint in that action despite having ample opportunity to do so, and he did not seek to vacate or appeal from the order dismissing his action. Most significantly, however, the commencement of the first action did not signal the end of the parties' marital relationship; rather, the defendant continued to reside with the plaintiff and accepted the care of the plaintiff and the benefits of their marital relationship until 1982 when the plaintiff commenced the instant action *(cf., Lennon v Lennon,* 124 AD2d 788; *Muller v Muller,* 116 Misc 2d 660; *Seldon v Seldon,* NYLJ, June 21, 1984, at 11, col 2; *but see, Wegman v Wegman,* 129 Misc 2d 968, *mod* 123 AD2d 220, *remittitur amended* 123 AD2d 238). In view of these facts, we conclude that to utilize July 18, 1980, as the cut-off date for the acquisition of marital property would be contrary to the fundamental policy underlying the Equitable Distribution Law. Such a result would permit a party to commence a baseless matrimonial action for the purpose of cutting off his or her spouse's right to a share in subsequently obtained property which would otherwise constitute marital property, while at the same time receiving the benefits of the parties' ongoing marital relationship.

In any event, even if we were to accept the defendant's interpretation of the statute, the defendant's New Rochelle

residence, his one-half interest in an office cooperative and his investment portfolio would still be deemed marital property since the record clearly demonstrates that these assets were acquired with funds received from the liquidation of his interest in a limited partnership, which partnership was acquired during the marriage and prior to the commencement of the defendant's action. Accordingly, these assets constituted marital property as they were acquired through the sale or exchange of marital property (cf., Lennon v Lennon, supra, at 790).

Similarly unavailing is the defendant's argument that the trial court erred in classifying as marital property an account receivable which resulted from a purported loan made by him during the instant litigation to a trust fund for the parties' daughter. The record clearly demonstrates that the moneys loaned by the defendant had their source in income generated by investments he acquired during the parties' marriage and prior to the date the instant action was commenced. The defendant failed to produce any evidence at trial to establish that the income which was utilized to make the loan to the trust account was from earnings after the commencement of the instant action. Hence, the trial court was clearly entitled to conclude that the disputed funds arose from some or all of the investments acquired by the defendant during the parties' marriage and that those investments as well as their earnings constituted marital property (see, Price v Price, 69 NY2d 8; Nolan v Nolan, 107 AD2d 190).

Additionally, for the reasons previously stated, we find unpersuasive the defendant's contention that the valuation date for the marital assets should have been July 18, 1980, the date when the defendant's aborted action was commenced (cf., Matter of Ward v Ward, 94 AD2d 908). The trial court's use of the date of trial (i.e., Feb. 1985) in valuing the majority of the marital assets was proper as most of the assets appreciated significantly during the three-year hiatus between the commencement of the instant action and the trial, as the result of market influences (see, Wegman v Wegman, supra, 123 AD2d, at 234-236). Recognizing that "the [valuation] date chosen must be tailored to the particular facts involved in each case and must be reflective of the legislative mandate to provide for the equitable distribution of the assets of the marital partnership" (Wegman v Wegman, supra, at 236), we perceive no basis for disturbing the values assigned to most of the assets by the trial court.

■ While we conclude that the lump-sum award to the plaintiff of 50% of the value of the defendant's retirement plan trust is supported by the record, we find that the trial court erred in valuing this asset as of the date of distribution. The retirement fund, being in the nature of a pension plan, constitutes marital property only to the extent that the corpus of the retirement fund accumulates during the marriage and prior to the commencement of the divorce action *(see,* Domestic Relations Law § 236 [B] [1] [c]; *Majauskas v Majauskas,* 61 NY2d 481; *Damiano v Damiano,* 94 AD2d 132). In awarding the plaintiff a share in the plan's value as of the date of distribution, the court improperly distributed contributions to the trust which were made after the date of the commencement of the instant matrimonial action and which therefore constituted separate rather than marital property. The record demonstrates that the value of the trust as of January 15, 1982, one week after the commencement of the instant action, was $760,065. Hence, the plaintiff is entitled to 50% of this amount, or $380,032.50, and the judgment has been modified accordingly *(see generally, Neumark v Neumark, supra; Kobylack v Kobylack, supra).*

■ Additionally, the evidence does not support the trial court's valuation of the defendant's professional corporation at $88,900. Although there was a paucity of proof on this issue, the record indicates that some assets held by the corporation were not considered in calculating its value and certain corporate liabilities alleged by the defendant were of dubious validity. In light of these facts, we conclude that the matter should be remitted to the trial court and should be reviewed as part of a hearing to determine the value and the proper distribution of the defendant's professional medical practice. That valuation should include, *inter alia,* an analysis of the tangible assets, earnings, goodwill and liabilities of the professional practice and the plaintiff's economic and noneconomic contributions thereto *(see generally, Arvantides v Arvantides,* 64 NY2d 1033). On this point, we note that the trial court erred in denying the plaintiff's posttrial application which sought, *inter alia,* to reopen the trial to permit the plaintiff to present evidence regarding the value of the defendant's license and psychiatric practice and to award her a portion of the value thereof. During the trial, the plaintiff limited her evidence regarding the defendant's professional practice to an analysis of the assets and liabilities of the practice. At one point during his cross-examination of one of the defendant's

valuation experts, the plaintiff's counsel asked several questions concerning the defendant's earning capacity and the value of his license. The court, however, sustained defense counsel's objections to this questioning and refused to permit further inquiry along this line. Subsequent to the conclusion of the trial herein, the Court of Appeals rendered its decision in *O'Brien v O'Brien* (66 NY2d 576) and on the basis of that decision, the plaintiff moved to reopen the trial to permit her to adduce evidence regarding the value of the defendant's professional license and practice in view of *O'Brien v O'Brien (supra)*. Clearly, the plaintiff is entitled to an equitable share of the defendant's practice and thus, her application for a further hearing on this issue should have been granted in order to insure a truly equitable distribution of marital assets between the parties *(see, Arvantides v Arvantides, supra; Litman v Litman,* 61 NY2d 918; *De Stefano v De Stefano,* 119 AD2d 793; *Sweeney v Sweeney,* 118 AD2d 774).

We note further, however, that, under the circumstances of this case, the plaintiff is not entitled to two separate awards for the defendant's license and psychiatric practice. In *O'Brien v O'Brien (supra),* the Court of Appeals determined that a medical license was marital property subject to equitable distribution. Significantly, however, in *O'Brien v O'Brien (supra),* the defendant husband, a surgical resident, had only recently acquired his medical license and he had not yet engaged in private practice. Clearly in that case the plaintiff wife was entitled to a distributive award representing her share in the value of the medical license. The case at bar presents a different scenario in that the defendant obtained his medical license in 1950, during the early years of the parties' marriage, and he subsequently developed his psychiatric practice over a period of approximately 30 years. The psychiatric practice was an ongoing and viable enterprise at the time the present action was commenced. Certainly in this situation, unlike *O'Brien v O'Brien (supra),* the medical license should be deemed to have merged with and been subsumed by the practice itself. Thus, if the plaintiff were to receive separate awards representing her share in the value of the defendant's license and medical practice, a double recovery might well result *(see, Vanasco v Vanasco,* 132 Misc 2d 227; Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:6, at 203). Accordingly, upon remittitur, we direct that the hearing court, in reaching a determination as to the plaintiff's appropriate

share in the value of the defendant's license and psychiatric practice, shall value the practice as a single asset and render one distributive award therefor to the plaintiff.

In reaching the foregoing result, we note that in some cases it would be appropriate to conclude that a spouse's license and practice have not merged thereby permitting the other spouse to receive an award for his or her share of the license. For example, if the licensed spouse's practice was newly established and had not yet developed to its full potential at the time of valuation, the license should be regarded as a separate asset apart from the practice (see, Maloney v Maloney, NYLJ, Apr. 15, 1986, at 16, col 3, affd 137 AD2d 666; see also, Cronin v Cronin, 131 Misc 2d 879). This same result would be appropriate in a situation in which a licensed professional chooses to sell his or her ongoing successful practice, move to another location, and at the time of the commencement of the divorce action, intends to open or has recently opened another practice on a full- or part-time basis. In that case, unlike instances in which the licensed spouse has completely retired, the license has reemerged as a significant and valuable asset similar to the factual situation in O'Brien v O'Brien (66 NY2d 576, supra) and thus the other spouse should be entitled to share in the value of the license.

We have considered the remaining contentions of the parties and find them to be without merit.

THOMPSON, BRACKEN and BROWN, JJ., concur.

Ordered that the appeal by the defendant Elizabeth Atwood Metz is dismissed, without costs or disbursements (see, CPLR 5511); and it is further,

Ordered that the judgment is modified, on the law and the facts, by (1) deleting subdivision 1 of the fifth decretal paragraph thereof and substituting therefor a provision awarding the plaintiff $380,032.50, said sum representing an amount equal to 50% of the trust holdings of the Harold Marcus, M.D., P. C. Retirement Plan Trust as of the date of the commencement of this action; and (2) deleting from subdivision 2 of the fifth decretal paragraph thereof the words "the interest standing in defendant Harold Marcus' name in Harold Marcus, M.D., P.C."; as so modified, the judgment is affirmed insofar as appealed from by the defendant husband and cross-appealed from by the plaintiff, without costs or disbursements, and the matter is remitted to the Supreme Court, Westchester County, for a hearing to determine the

value and the equitable distribution of the defendant husband's psychiatric practice, which determination shall include a new valuation of the defendant husband's professional corporation; and it is further,

Ordered that the appeal from the order entered April 15, 1986, is dismissed as academic, without costs or disbursements, in light of our determination on the appeal from the judgment.