■ Ellen Rosenberg, Respondent, v David Rosenberg, Appellant.—In an action for a divorce and ancillary relief, the defendant husband appeals, as limited by his notice of appeal and brief, from stated portions of a judgment of the Supreme Court, Rockland County (Miller, J., on judgment; Edelstein, J., on decision), dated August 7, 1987, as (1) designated certain bank accounts as the plaintiff wife's separate property, (2) awarded the wife a distributive share of his medical practice in the amount of $89,000 and ordered him to transfer to the wife his interest in the marital home in lieu of a cash transfer, (3) failed to include the wife's Master's degree in social work as a marital asset, (4) granted the plaintiff one half of the marital assets, (5) directed him to transfer certain Keogh and Individual Retirement Account funds to the wife, (6) directed him to maintain medical insurance for the wife, (7) directed him to maintain a life insurance policy designating the wife and children as irrevocable beneficiaries until termination of his maintenance and child support obligations, (8) directed him to pay maintenance to the wife in the amount of $150 per week for eight years, (9) directed him to pay child support in the amount of $150 per week per child, and (10)

directed him to pay the wife's counsel fees in the amount of $10,000.

Ordered that the judgment is modified, on the facts and as a matter of discretion, by (1) deleting so much of the fourth decretal paragraph thereof as directed payment of $150 maintenance per week to the plaintiff by the defendant for a period of eight years and substituting therefor a provision directing that those payments be made for a period of six years, and (2) deleting so much of the seventeenth decretal paragraph as directed an equal division of the Churchill Securities and E. F. Hutton accounts and payment of $10,000 to the plaintiff from these accounts and substituting therefor a provision directing payment of $10,000 to the plaintiff, $7,044.91 to the defendant and an equal division of the remainder of the funds in these accounts; as so modified, the judgment is affirmed, without costs or disbursements.

We find that the Supreme Court did not improvidently exercise its discretion in distributing 50% of the marital property, including the husband's medical practice, to the wife. At the time the parties married, the wife had completed the first year of a two-year course of study for a Master's degree in social work. The husband began his first year of medical school in 1972 after the parties were married. Although the wife was employed as a social worker after earning her degree, that work was interrupted by the birth of their first child. After the birth of a second child in December 1975 the wife did not ever again pursue her career as a social worker but remained at home to care for the children. The wife's contributions to the husband's medical career were significant because they were made early in the marriage. She helped the husband pursue his medical career and her noneconomic contributions as parent, spouse and homemaker were substantial (see, Marcus v Marcus, 137 AD2d 131). The husband completed his medical studies and opened a practice as an internist in the parties' home in 1979. The wife worked without pay in the husband's medical office for about six months. Thereafter, she was a full-time homemaker and caretaker for the parties' four children until 1983, when she obtained employment as a fundraiser. This action for a divorce was commenced in 1985.

Although the marriage was of moderate length, an equal division of the marital property was not an improvident exercise of the court's discretion under the factors enumerated in Domestic Relations Law § 236 (B) (5) (d). In particular, the wife had contributed to the economic partnership as a parent

and homemaker and had delayed development of her career potential in favor of the advancement of the husband's profession and in order to raise the parties' four children *(see, Price v Price,* 69 NY2d 8).

The trial court was presented with conflicting evidence with respect to the value of the husband's medical practice. We find no error in the trial court's determination that the valuation of $178,000 provided by the wife's expert was more credible. This valuation, contrary to that provided by the husband's experts, was based on a review of the husband's business records, tax returns and deposition testimony and included such factors as earnings, tangible assets, goodwill and expenses *(see, e.g., Marcus v Marcus, supra).*

We need not reach the issue of whether the wife's Master's degree in social work and her accompanying State certification constituted marital property, since there was no credible evidence adduced as to the value of the degree and/or certification. Initially, we note that the wife had not worked as a social worker since 1975. Although the husband offered expert testimony to attempt to establish the value of the degree based on her enhanced earning capacity *(see, e.g., O'Brien v O'Brien,* 66 NY2d 576; *Raff v Raff,* 120 AD2d 507), this expert's testimony was incredible as a matter of law. The expert was unaware of the wife's previous earnings as a social worker, and failed to provide the underlying figures upon which his testimony of enhanced earnings was based. Furthermore, this expert fixed a present value for the wife's Master's degree which was greater than the value he attributed to the husband's 10-year-old medical practice as an internist, despite the fact that the wife had neglected her career during the same years that the husband was in an established medical practice.

With respect to the court's distribution and valuation of the parties' remaining assets, we find that the court erred to the extent of not giving the husband credit for a $7,044.91 deposit into a Keogh account made seven months after the commencement of this action. Although the evidence established that the account, when opened, was marital property, the husband's testimony and documentary evidence, which were unrebutted, demonstrated that the subsequent deposit should be treated as separate property for the purpose of equitable distribution *(see,* Domestic Relations Law § 236 [B] [1] [c]; *Gredel v Gredel,* 128 AD2d 834). The judgment should also be modified so as to provide that the $10,000 awarded to the wife

from the E. F. Hutton fund should be deducted before the balance of the fund is divided equally.

The child support award is not excessive given the husband's resources, the children's needs and the standard of living they would have enjoyed if the marriage had not been dissolved (see, Domestic Relations Law § 236 [B] [7] [a]). The trial court erred in attributing monthly payments from a mortgage assignment in the amount of $480 to the husband's income when, in fact, the evidence established that the husband received $200 per month and the four children received $280 per month. However, this amount (i.e., $3,360 less income per year to the husband) is not so significant as to warrant a reduction of the child support or maintenance awards. Furthermore, the children's portion of the assignment income is paid into custodial accounts which, pursuant to the judgment, are not available to meet the daily needs of the children. Since the parents are able to meet the children's needs, the court properly directed that the children's custodial accounts be maintained for college expenses (see, Malamut v Malamut, 133 AD2d 101).

Notwithstanding the husband's claim that the gross income from his practice in 1985 was $110,000, the court's determination to fix maintenance and child support by this board-certified internist in the total sum of $750 per week was justified. The court's apparent belief that it was not bound by the husband's reported income is reflected in the finding that he earned "at least $110,000.00 yearly from his medical practice" (emphasis supplied) and was proper (see, Kay v Kay, 37 NY2d 632). There was evidence that the husband's actual income was higher than his reported income. The court properly determined the amount of maintenance and child support based upon the husband's superior earning capacity which is not bound by a rigid salary schedule (see, Gunn v Gunn, 143 AD2d 393).

While we do not consider the amount of the maintenance awarded to be excessive, we find that such payments should be limited to six years, based on the trial court's finding that the wife could become self-supporting in that period (see, e.g., Formato v Formato, 134 AD2d 564; Blackman v Blackman, 131 AD2d 801). Pursuant to Domestic Relations Law § 236 (B) (8) (a), the trial court had the authority to order the husband to maintain health and life insurance policies while his child support and maintenance obligations continued (see, Murphy v Murphy, 110 AD2d 688).

Finally, the award of counsel fees to the wife's attorney in

the sum of $10,000 was proper. The financial circumstances of the parties was extensively covered during the course of the trial. While the husband would ordinarily be entitled to an evidentiary hearing with regard to the value and extent of counsel's claimed services, we note that the husband failed to request such a hearing or raise any objection to the submission of the issue of counsel fees based on papers. Accordingly, the husband has waived his right to a hearing on this issue (see, Janousek v Janousek, 108 AD2d 782; Lynch v Lynch, 97 AD2d 814). Thompson, J. P., Rubin and Spatt, JJ., concur.

Balletta, J., concurs insofar as the judgment appealed from is modified, but dissents in part and votes to further modify the judgment appealed from by reducing the maintenance to $75 per week and the child support to $100 per week per child, and to delete so much of the ninth decretal paragraph thereof as held that three bank accounts held by the plaintiff constitute separate property, and as so modified, to affirm the judgment, and remit the matter to the Supreme Court, Rockland County, for further findings on the issue of whether three bank accounts held by the plaintiff constitute separate property, with the following memorandum: Although the majority has reduced the period of maintenance from 8 years to 6 years, they have chosen to affirm the trial court's award directing the defendant to pay maintenance to the wife in the sum of $150 per week and child support of $150 per week for each of the four children, for a total award of maintenance and child support in the sum of $750 per week. I believe that a closer analysis of the parties' financial circumstances would warrant a downward modification of that sum to $75 per week for maintenance and $100 per week per child for child support.

Upon any award of maintenance, the trial court is required to consider and accommodate the reasonable needs of the spouse seeking support and the financial ability of the other spouse to meet those needs (see, Domestic Relations Law § 236 [B] [6] [a]; Colin v Colin, 113 AD2d 817; Matter of De Nicola v De Nicola, 108 AD2d 745; Brennan v Brennan, 103 AD2d 48). Similarly, in setting child support, the court must consider the financial resources of the custodial and noncustodial parent, as well as those of the child (Domestic Relations Law § 236 [B] [7] [a] [1]).

In the instant case, the defendant's net income from his medical practice had shown a steady decline over a three-year period, even before the action was commenced. In 1983, the net income from his practice was $81,596; in 1984, it was

$71,323; and, in 1985, it was $47,232. Moreover, the defendant estimated that his gross receipts for 1986 would be about $113,589, and that his expenses would be about the same as they were in 1985, namely, $62,788. Thus, his net income for 1985 would be about $50,801. This estimate would be in conformity with the testimony of the plaintiff's expert that the defendant's expenses ran about 46% of his gross income.

The trial court's award for maintenance and child support totaled $750 per week, which, in turn, amounts to $39,000 per year. Even assuming a net income of $50,000, the trial court's award would be nearly 80% of the defendant's net income.

When the total amount of the award is compared with the defendant's burden of having to establish a separate household for himself, including the fact that it would cost the defendant another $2,500 per month to rent comparable office space in a commercial area (he had maintained his office in the marital residence which was awarded to the plaintiff), it is clear that the defendant will be stripped of all ability to meet his own basic needs (see, Matter of Flanter v Flanter, 123 AD2d 626; Chachkes v Chachkes, 107 AD2d 786).

Furthermore, the bulk of the weekly award, consisting of the child support payments, is not tax deductible by the defendant, thereby increasing his tax obligation (26 USC § 215). It would appear, therefore, that the trial court gave inadequate consideration to the tax consequences of its award (Domestic Relations Law § 236 [B] [6], [7]; Jerkovich v Jerkovich, 100 AD2d 575).

I am in agreement with the majority that the trial court erred in finding that the defendant earned approximately $480 per month from a mortgage assignment, when in reality the undisputed testimony showed that pursuant to the terms of the mortgage assignment, the defendant received only $200 for himself, while the remaining $280 was divided among the parties' four children. The majority then notes that the deduction from the plaintiff's total income of $3,360 per year is not significant. While standing alone that might be true, after taking all of the above factors into consideration, including the reduction in the husband's income of $3,360, as well as the fact that the plaintiff will have nearly $80,000 in liquid assets after equitable distribution, and that she is relatively young and has a Master's degree in social work, I vote to reduce the maintenance to $75 per week and child support to $100 per week per child.

With respect to the three bank accounts that the trial court

determined were the plaintiff's separate property, I would point out that the trial court's determination is unsupported by any trial testimony as to whether they should be separate or marital property. At a minimum, that question should be remitted to the trial court for further findings.

Accordingly, I dissent in part from the majority's decision and vote to further modify the judgment appealed from to the extent indicated above.