OPINION OF THE COURT
Raymond E. Cornelius, J.
This matrimonial action was commenced on October 25, 1989, and both parties, in their respective pleadings, have requested a decree of divorce, together with other ancillary *530 relief. The parties were married on September 26, 1964, in Rochester, New York, and there were two children born of the marriage, both of whom reside in the former marital residence with the plaintiff.[1] The oldest child is 23 years of age, and fully emancipated, and the youngest child, who was born on April 11, 1971, and 20 years of age at the present time, plans to enter the military in October 1991.[2] Both parties are over the age of 18, and for a continuous period of more than two years immediately preceding the commencement of this action, have been residents of the State of New York.
A trial was conducted before this court on all issues raised by the respective pleadings, and the following constitutes the findings of fact and conclusions of law.
EQUITABLE DISTRIBUTION
In order to make an equitable distribution of the marital assets, it is first necessary to identify such assets. In this connection, issues have been raised concerning plaintiff’s claims to defendant’s educational degrees and/or career, as well as certain items of claimed separate property.
A. Enhanced Earning Capacity
During the course of the marriage, the defendant began a career in law enforcement with a suburban police department. In order for him to initially be appointed as patrolman, and thereafter, promoted to the position of sergeant, as well as his current position of lieutenant, it was necessary for the defendant to take and pass, on each occasion, civil service examinations. Although not a prerequisite to promotion within the department, the defendant also pursued a course of study in criminal justice at local colleges, and acquired an Associate’s degree and a Bachelor of Science degree. These degrees were received at approximately the same time as the successful completion of the civil service examinations, which were necessary in order for him to be considered for a promotion to sergeant, and then to lieutenant. Pursuant to O’Brien v O’Brien (66 NY2d 576 [1985]), the plaintiff now makes a claim for a distributive award of a portion of the enhanced earning capacity of the defendant, as a result of his attainment of the position of lieutenant within the police department.
*531 The defendant graduated from high school in 1960, and for a short period of time thereafter, was employed by a local industry. He had been a member of the Naval Reserves, and after he served in active duty for two years, was discharged in 1963. During his service with the Navy, the defendant studied what he described as correspondence courses, and as a result of passing certain examinations, received certificates and advancements. During the period of active duty, he served on board a ship where he primarily did clerical work, including typewriting.
After discharge from the Navy in 1963, the defendant returned, for a short period of time, to his former employer, where he worked as a machine operator. This was followed during the 1960’s by work at other local industries, which included various types of work such as being a stock handler, welder, laborer in a machine shop, and clerical duties.
Prior to 1967, the defendant had taken several trade courses, and subsequent thereto, took other courses at a local community college, which addressed the subjects of English, communications, reading comprehension and writing. In 1968, the defendant became employed by a construction company, which was operated by his brother-in-law, but continued to take educational courses.
Ultimately, the defendant decided to pursue a career in law enforcement, and on August 15, 1970, after the successful completion of a civil service examination, was appointed a patrolman in the police department where he currently is employed. Also, beginning in the fall of 1970, he took courses in the criminal justice program of Monroe Community College, and received an Associate’s degree in June 1973. During the summer of 1973, following the study of certain review material, the defendant passed a civil service examination for sergeant, and was promoted to this position in April 1974. Following graduation from the community college, the defendant enrolled in a criminal justice program at the Rochester Institute of Technology, and received a Bachelor of Science degree in June of 1976. In the spring of that same year, after expending a period of time studying review material, the defendant passed the civil service examination for lieutenant, and was promoted to that position in December 1976.
Although the police department, for which the defendant is employed, pays a small annual stipend for an officer who has acquired an Associate’s degree or a Bachelor’s degree, the only *532 formal education required for appointment to or a promotion within the department is a high school diploma. Indeed, most of the sergeants and lieutenants, within this relatively small police department, do not possess college degrees. The Chief of Police testified that appointments as patrolman are made from a list of persons who have passed a civil service examination, but his recommendation to employ someone is based upon a background investigation and a personal interview, as well as the test results. Similarly, promotions to sergeant and lieutenant involve the same three factors, but more emphasis is placed on an individual officer’s performance on the job. Furthermore, a candidate is required to personally appear before the town board, which makes the ultimate decision.
During the approximate 10-year period of time that the defendant pursued his educational studies, the plaintiff made indirect contributions thereto by primarily assuming responsibilities of managing the household, maintenance, meal preparation and child care. In addition, however, the plaintiff made direct contributions by actively participating in the defendant’s educational studies and career advancement as a law enforcement officer.[3] For example, after the defendant decided to pursue a career as a police officer, the plaintiff became and has remained politically active in the town, in which the defendant is employed as an officer. Although the parties disagree as to the extent to which she assisted the defendant in his educational studies, the credible evidence established that the plaintiff did participate in the defendant’s studies, particularly in the earlier stages of his educational pursuits. For instance, in regard to the courses taken during the 1960’s, involving reading comprehension and basic English, the plaintiff would assist the defendant on a daily basis by reviewing the material with him. In fact, the parties mutually agreed that the defendant would attempt to further his education, and the plaintiff’s mother paid the tuition and expenses for books for these courses.
After the defendant commenced his more formal college studies in criminal justice, the plaintiff actively participated in these studies by reviewing homework for certain courses with the defendant, typing papers and doing some research. Also, the plaintiff assisted the defendant with the review material, which he studied in preparation for the civil service examinations for promotion to sergeant and lieutenant, al *533 though it would appear that plaintiff’s assistance was less for the lieutenant’s examination. At the examination before trial, portions of which were read into the record at the trial, the defendant acknowledged that the plaintiff had assisted him with his education, and further stated that his education had assisted with his promotion to sergeant, as well as passing the civil service test for lieutenant.
In O’Brien v O’Brien (66 NY2d 576, supra), the Court of Appeals held that a license to practice medicine, which was acquired during marriage, constituted a marital asset for purposes of equitable distribution. The court stated that "[a] professional license is a valuable property right, reflected in the money, effort and lost opportunity for employment expended in its acquisition, and also the enhanced earning capacity it affords its holder, which may not be revoked without due process of law” (supra, at 586). Following this decision, appellate courts have not only applied the ruling to medical or other professional licenses, but have also extended it to degrees, certifications, and other formal acknowledgments of achievements in given professions. (See, e.g., McAlpine v McAlpine, 176 AD2d 285 [2d Dept 1991] [fellowship in the Society of Actuaries]; Finocchio v Finocchio, 162 AD2d 1044 [4th Dept 1990] [license to practice law]; DiCaprio v DiCaprio, 162 AD2d 944 [4th Dept 1990] [Master’s degree, permanent certification in school administration]; Shoenfeld v Shoenfeld, 168 AD2d 674 [2d Dept 1990] [medical license]; Gross v Gross, 160 AD2d 976 [2d Dept 1990] [Master’s degree, teaching certificate]; Holihan v Holihan, 159 AD2d 685 [2d Dept 1990] [guidance counselor license]; Anderson v Anderson, 153 AD2d 823 [2d Dept 1989] [Master’s degrees in health care administration and labor and industrial relations, nursing home administrator license]; Morimando v Morimando, 145 AD2d 609 [2d Dept 1988] [physician’s assistant — registration with the New York State Department of Education Professional License Service and certification by the National Committee]; Behrens v Behrens, 143 AD2d 617 [2d Dept 1988] [medical license]; McGowan v McGowan, 142 AD2d 355 [2d Dept 1988] [Master’s degree]; Marcus v Marcus, 137 AD2d 131 [2d Dept 1988] [medical license]; Kutanovski v Kutanovski, 120 AD2d 571 [2d Dept 1986] [medical license]; Raff v Raff, 120 AD2d 507 [2d Dept 1986] [medical license].) Recently, this concept of equitable distribution of enhanced earning capacity has been even further extended to "a career as a performing artist, and its accompanying celebrity status”. (Elkus v Elkus, *534 169 AD2d 134, 136 [1st Dept 1991]; also see, Golub v Golub, 139 Misc 2d 440 [1988].)
Pursuant to the provisions of Domestic Relations Law § 236 (B) (1) (c), "marital property” in pertinent part is defined as "all property acquired by either or both spouses during the marriage and before * * * the commencement of a matrimonial action, regardless of the form in which title is held”. However, for purposes of the concept discussed above, defining a license, degree or other item as marital property, does not end the inquiry. A careful analysis of these decisions discloses at least three elements of proof, which must be established before a distributive award is made to a spouse — (1) enhancement of earning capacity attributable to a marital asset; (2) contribution to the creation of the marital asset by the other spouse; and (3) value.
(1) Enhancement of Earning Capacity
It is clear, based upon the authority cited above, that the defendant’s Associate’s and Bachelor’s degrees would constitute marital property. However, it is equally apparent that the degrees, to the extent that they consist only of the formal documents conferred upon the defendant by the institutions of higher learning, did not result in his promotions within the police department, and indeed, were not required. In McAlpine v McAlpine (supra), the defendant had testified that a fellowship in the Society of Actuaries was not necessary for his particular job, and accordingly, the court held that the plaintiff failed to establish that this fellowship, in fact, enhanced the defendant’s earning capacity. .
In the pending case, the study of the review material certainly aided the defendant in passing the civil service examinations, which were required in connection with his promotions. In addition, however, the court concludes that the knowledge and other skills acquired by the defendant, as a result of taking college courses, also enabled him to not only successfully complete these examinations, but in turn, to acquire the necessary job skills and present himself favorably for interviews, which were factors in his two promotions. These, of course, are quite intangible, and somewhat analogous to the facts in Elkus v Elkus (supra). Therefore, an interesting question is presented as to whether or not the knowledge and abilities acquired as the result of an educational program, which is pursued during the course of a marriage, may be considered marital property.
*535 Although the printed or written document, which constitutes a college degree, may, itself, represent marital property because of the reasonable certainty that it will lead to enhanced earning capacity, it also represents the culmination of a person’s education. This concept was recognized in McGowan v McGowan (supra), wherein the court held that a teaching certificate awarded two weeks after a marriage, as the result of an educational program completed prior to marriage, did not constitute marital property. The court stated that a degree or license, in order to be marital property, must be attributable to a course of study, at least part of which was undertaken during the marriage. Similarly, in McAlpine v McAlpine (supra), a fellowship in the Society of Actuaries was held to constitute marital property, but only to the extent represented by the successful completion of five examinations during the course of the marriage, as distinguished from the other five examinations taken prior to the marriage. (Cf., Kyle v Kyle, 156 AD2d 508 [2d Dept 1989].) (Trial court properly denied a posttrial motion to reopen the proof to permit testimony of value, in connection with an uncompleted course of studies undertaken during the marriage in anticipation of obtaining a high school principal license, but which license had not been granted at the time of the divorce because of the failure to take two courses.)
This court holds that the two degrees obtained by the defendant in this case constitute marital property, which enhanced the defendant’s earning capacity because of the knowledge and other skills represented by those degrees. In addition, the successful completion of the civil service examinations, which resulted from the knowledge represented by these degrees as well as the direct studies for such examinations, enhanced the defendant’s earning capacity, and should be considered as marital property subject to equitable distribution.
(2) Contribution
Notwithstanding the fact that a particular marital asset may have enhanced a person’s earning capacity, the other spouse must establish a contribution thereto in order to benefit from an equitable distribution of such asset. Thus, in McAlpine v McAlpine (176 AD2d 285, supra), the court held that even if the fellowship in the Society of Actuaries could otherwise be considered for distribution, the plaintiff, in this *536 short-term marriage, had not made any "personal sacrifices in her career or educational goals, and did not make any substantial contribution to the attainment of the fellowship”. As already discussed, the plaintiff in the pending case made not only an indirect contribution, but also significant direct contributions to the attainment of defendant’s college degrees and successful completion of the civil service examinations.[4] Under the circumstances, the court believes that the plaintiff should share equally in the value of these marital assets.
(3) Value
In order to receive the benefit of an equitable distribution of a marital asset, such as a degree or certification, it is incumbent upon the other spouse to produce credible evidence concerning valuation of the enhanced earnings. (See, Gross v Gross, 160 AD2d 976, supra; Rosenberg v Rosenberg, 155 AD2d 428 [2d Dept 1989].) This usually takes the form of expert testimony and involves a comparison between the projected income of a person, as the result of the attainment of a license or degree, for example, and the income which would have been received without such marital asset. The difference between these two amounts should then be adjusted to reflect such factors as income taxes, inflation rate, real interest rate, capitalization rate, and discount for present value. (See, O’Brien v O’Brien, 66 NY2d 576, supra; Finocchio v Finocchio, 162 AD2d 1044, supra; DiCaprio v DiCaprio, 162 AD2d 944, supra.) Of course, failure to select the correct income stream for either a person’s employment with or without such a degree or license will result in an incorrect evaluation. (See, McAlpine v McAlpine, supra; Holihan v Holihan, 159 AD2d 685 [2d Dept 1990], supra; Shoenfeld v Shoenfeld, 168 AD2d 674, supra.)
In the pending case, the plaintiff produced, as an expert witness, a forensic economist, who is Chairman of the Department of Economics at the Rochester Institute of Technology. He determined the difference between the income of a lieutenant and a patrolman in the police department, in which the defendant is employed, and after adjustment for Federal and State income taxes, projected the income streams over the defendant’s work-life expectancy, based upon an annual increase of 6.42%, which statistically has been the recent rate of *537 increase for public safety officers. The amount was then discounted by 7.43%, based upon the rate of three-month Treasury bills, in order to arrive at a present value of the defendant’s enhanced earnings, which the court accepts, in the amount of $107,963.74.
Conversely, the court rejects the method of evaluation employed by defendant’s expert witness, who was a certified public accountant. He simply multiplied the amount of $625, which is the annual stipend paid for a Bachelor’s degree by the police department, by the defendant’s work-life expectancy, and discounted to present value. Assuming that the annual bonus would increase in the future, the total value would be under $5,000. This methodology, of course, ignores the concept of enhanced earning capacity, as a result of the knowledge and skills acquired by the defendant from his college studies and review for the civil service examinations.
Based upon the foregoing, this court concludes that the plaintiff is entitled to a credit of one half of the enhanced earnings of the defendant, or the amount of $53,981.87.[5]

. Domestic Relations Law § 236 (B) (5) (d) (2); (6) (a) (2).

. Domestic Relations Law § 236 (B) (6) (a) (6).

. Domestic Relations Law § 236 (B) (5) (d) (6); (6) (a) (8).

. Domestic Relations Law § 236 (B) (5) (d) (6); (6) (a) (8).

. Domestic Relations Law § 236 (B) (6) (a) (1).