■ PATRICIA B., Respondent-Appellant, v STEVEN B., Appellant-Respondent.—In an action for a divorce and ancillary relief, the defendant husband appeals, as limited by his notice of appeal and brief, from stated portions of a judgment of the Supreme Court, Queens County (Modugno, J.H.O.), dated December 15, 1989, which, after a nonjury trial, *inter alia,* equitably distributed the appreciation in value during the marriage of his periodontal practice and his Keogh and Individual Retirement Account funds, and the plaintiff wife cross-appeals, as limited by her notice of appeal and brief, from stated portions of the same judgment, which, *inter alia,* (1) equitably distributed only the appreciation in value of the husband's periodontal practice, (2) awarded her maintenance of only $500 per week for two years only, and (3) awarded her counsel and experts' fees of only $17,100.

Ordered that the judgment is modified, on the facts and as a matter of discretion, by (1) deleting so much of the fourth decretal paragraph thereof as directed payment of $500 maintenance per week to the plaintiff by the defendant for a period of only two years and substituting therefor a provision directing that the maintenance payments of $500 per week be made for a period of five years, (2) deleting so much of the sixth decretal paragraph thereof as awarded the plaintiff a distributive award of $145,212 and substituting therefor a provision awarding her $103,554, (3) deleting the eighth decretal paragraph thereof, which awarded the plaintiff counsel and experts' fees in the sum of $17,100 and substituting therefor a provision awarding her $35,100, and (4) adding provisions thereto directing that (a) the distribution from the defendant's individual retirement account shall be made directly to the plaintiff's individual retirement account, and (b) the distribution of the defendant's Keogh accounts shall be made by a Qualified Domestic Relations Order; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to

the Supreme Court, Queens County, for entry of an appropriate amended judgment and to set the time and manner of payment of the distributive award and the award of counsel and experts' fees.

Approximately two months before the parties married on December 24, 1982, the defendant, a licensed periodontist since 1977, opened a periodontal practice in Patchogue. The plaintiff worked in the defendant's practice as the office manager from 1982 until sometime in the spring 1986, a few months before she commenced the instant action on August 26, 1986.

Contrary to the plaintiff's contention, we find that the periodontal practice, an asset acquired by the defendant before the marriage, constituted separate property (see, Domestic Relations Law § 236 [B] [1] [d] [1]). In determining the increase in value of the defendant's periodontal practice during the marriage, however, we find that the court erred. The trial court's use of the time of the trial (Dec. 31, 1988) as the date for evaluating the practice was improper. Given the nature of this asset, the success of which is almost wholly the result of the defendant's efforts and experience, the increase in value between the date of commencement of this action and the date of trial cannot be attributed to economic forces beyond his control, and, therefore, the plaintiff should not benefit from that increase (see, Price v Price, 69 NY2d 8; Siegel v Siegel, 132 AD2d 247). Consequently, the proper date for determining the increase in value of the practice was the date of commencement of the action.

At the trial, there was conflicting evidence with respect to the increase in value of the defendant's periodontal practice between 1982 and 1986. We conclude that the court should not have accepted the analysis of the plaintiff's expert in evaluating the increase in the value of the practice, inasmuch as the valuation provided by the defendant's expert, who estimated the increase in value to be at most $127,000, was clearly more credible. This valuation, unlike that of the plaintiff's expert, was based on a review of the defendant's business records and tax returns, and interviews with both the defendant and his accountant, and included such factors as earnings, tangible assets, goodwill, and liabilities (see, e.g., Rosenberg v Rosenberg, 155 AD2d 428; Marcus v Marcus, 137 AD2d 131).

However, we believe that an additional $85,099 should be added to the $127,000 figure as the total subject to distribution. First, that the value of the practice was de minimis prior

to the parties' marriage, and thus there is no basis for classifying $72,359 of the value to separate property. In addition, the record supports increasing the practice's gross receipts for 1986 by another $36,400, which represents cash income of $700 per week, drawn away as "expenses" and petty cash and utilized for purposes unrelated to the practice. The addition of this sum to gross receipts adds $12,740 to value attributable to goodwill. Further, although a 20% distributive award is not facially inadequate given the short duration of the marriage, under the particular circumstances of this case—which include the plaintiff's work as office manager during a period of rapid growth—we believe that the plaintiff should be awarded 33⅓% of the practice.

In making our determination with regard to this component of the distributive award, we strongly disagree with our dissenting colleague both as to reasoning and result. We note at the outset that we have addressed the question of the proper distribution of the practice only, not marital assets *in toto,* inasmuch as we do not disagree with either the Supreme Court or the dissent concerning the remainder of the property division.

Contrary to the position of our dissenting colleague, there is no basis in law for beginning an analysis concerning a business or a professional practice with a presumption that the parties must divide such an asset on an equal basis subject to modification after due consideration of the factors enumerated in Domestic Relations Law § 236 (B) (5). The statutory provisions and legislative history thereof do not support such a proposition, and case law, including those cases cited in the dissent, has not championed equal distribution of assets. Nor can *Conner v Conner* (97 AD2d 88) be cited for the principle of equal division of property, especially since four of the five Judges on that bench concurred in result only.

This relatively short and childless marriage was essentially over on the date that the wife served a summons and complaint commencing this action for divorce—some three and one-half years after it began. We have all agreed that the date of commencement of the action should be used to value the husband's periodontal practice. Despite this, the dissent argues that we should consider this a six and one-half year marriage because it took three years from the date this action was commenced for the trial to be concluded and final judgment entered. We do not agree.

This marriage was effectively over when the action was commenced. We recognize the plaintiff's contribution to the

practice for those initial three and one-half years—a contribution which ceased thereafter—by awarding her 33⅓% of the practice, based upon circumstances of this case. We take issue with going further based upon the factors discussed by our dissenting colleague. While the plaintiff's health, emotional difficulties, and substance abuse, as well as the defendant's knowledge of her psychological makeup prior to the marriage are not to be ignored, we are satisfied that we have fully considered these factors by increasing the maintenance awarded to the wife from $500 per week for two years, to $500 per week for five years, and by giving her a full 33⅓% of the value of the periodontal practice rather than the 20% awarded by the trial court. Our award provides for her health concerns and employment prospects in dissolving this relatively short-term marriage.

As a final note on valuing the practice, we also find that there is no basis in the record for valuing goodwill at 45% of gross receipts, rather than the 35% figure selected by the expert. Unlike our factual finding with respect to gross receipts and actual value of the practice at the time of the marriage, the per cent of goodwill used to determine gross receipts is a matter for experts, which Judges should eschew challenging, unless a mistake discernible to lay people is apparent. Inasmuch as our dissenting colleague does not disagree that the defendant's expert was the most credible and his analysis was carefully performed, his expert opinion on this question should not be disturbed.

We turn now to other portions of the judgment. While we do not consider the amount of maintenance awarded to be inadequate, such payments should be made for five years based upon the uncontroverted evidence adduced at the trial that it would take the plaintiff at least that long to become self-supporting *(see, e.g., Sperling v Sperling,* 165 AD2d 338; *Rosenberg v Rosenberg,* 155 AD2d 428, *supra).* Further, the plaintiff clearly established her entitlement to counsel and expert fees in the sum of $35,100. The court's action in awarding less than half that sum was improper, since the defendant's 1988 gross income was approximately $225,000, while the plaintiff was unemployed and suffering from serious psychiatric problems *(see,* Domestic Relations Law § 237; *Robinson v Robinson,* 166 AD2d 428; *Hackett v Hackett,* 147 AD2d 611). Under the circumstances of this case, the court did not improvidently exercise its discretion in declining to direct the husband to maintain a life insurance policy for the plaintiff's benefit *(cf., Rosenberg v Rosenberg, supra).*

Finally, we also modify the judgment to direct that the husband contribute the requisite portion of his individual retirement account directly to the wife's individual retirement account and that the distribution from the husband's Keogh account shall be made by Qualified Domestic Relations Order (QUADRO) to avoid a negative tax impact on the husband *(see, Nolan v Nolan,* 107 AD2d 190; *Ryan v Ryan,* 92 AD2d 889).* Balletta, J. P., Ritter and Copertino, JJ., concur.

Miller, J., dissents in part, and votes to reduce the plaintiff's distributive award to $158,000 and otherwise concurs, with the following memorandum:

I concur with the majority except insofar as I would modify the judgment differently in the following respects.

I would increase the value of the periodontal practice not only by increasing its gross receipts due to evidence of unreported cash and improper deductions, but I would also increase the per cent applied to gross receipts to determine the value of goodwill from 35% to 45% to reflect the markedly vigorous rate of growth of the practice.

Moreover, I would increase the 20% distributive award to the wife ordered by the court to 50% rather than the 33⅓% awarded her by the majority.

Since the economic partnership theory of marriage underlies equitable distribution *(see, Dolan v Dolan,* 78 NY2d 463; *Price v Price,* 69 NY2d 8; *Zelnik v Zelnik,* 169 AD2d 317), the only logical starting point in determining a per cent of distribution implies an equal split, which of course is subject to modification as a result of all of the statutory factors we are mandated to consider as bearing upon the fairness of the distribution *(see,* Domestic Relations Law § 236 [B] [5] [d]; *Greenwald v Greenwald,* 164 AD2d 706; *Conner v Conner,* 97 AD2d 88). Depending upon the applicability of those factors, marital property may be distributed equally or unequally in any conceivable proportion consistent with the court's vision of equity in the particular case.

## The Wife's Direct Contribution to the Husband's Practice

This doctor's wife worked as office manager for her husband throughout the marriage until a few months before the commencement of this action, doing bookkeeping, answering telephones, making appointments with patients, paying bills, purchasing supplies, and often preparing payroll at home after work. When the doctor worked as an independent con-

tractor for other dentists, she served as his dental assistant, setting out instruments for him. She attended conventions and seminars, and helped to decorate his office. During this period the practice grew at an average rate of over 50% per year, a higher percentage than it enjoyed after she was no longer employed. His income during this period also increased dramatically.

New York case law recognizes that the objective dollar value of the nontitled spouse's direct contribution to the practice's ultimate success may well be incapable of valuation by any mathematical theory, and such a mathematical correlation need not be provided *(see, Zelnik v Zelnik, supra; Robinson v Robinson,* 166 AD2d 428; *but cf., Fitzgibbon v Fitzgibbon,* 161 AD2d 619; *Mahlab v Mahlab,* 143 AD2d 116; *Lisetza v Lisetza,* 135 AD2d 20; *Romano v Romano,* 133 AD2d 680). The fact that the contribution was made in the early years when the seeds of the practice's future success were being sown, has, however, been recognized as a significant factor in weighing the value of the contribution of the nontitled spouse *(see, Price v Price, supra; Marcus v Marcus,* 137 AD2d 131). The fact that the doctor was overwhelmingly responsible for the practice's success does not in and of itself pre-ordain a greater distribution of the practice to him *(Day v Day,* 112 AD2d 972; *Harness v Harness,* 99 AD2d 658). Other relevant legislative factors set forth in Domestic Relations Law § 236 (B) (5) (d) must also be considered in determining the wife's equitable share of the marital property.

### The Wife's Indirect Contributions to the Marriage

In addition to her services as office manager, the wife was stepmother, homemaker, and companion to the husband's children of his prior marriage, with whom she developed a warm and loving relationship, a fact not disputed by the husband. Thus, while this marriage was "childless" in the traditional sense, since it produced no offspring (to the wife's disappointment) the wife contributed substantially to the care and nurturing of the children of the husband's first marriage as a loving stepmother, a contribution comparable to that of a natural parent. (In this case her relationship with the children predated this marriage by three years, since the parties cohabited for three years prior to their marriage.)

In addition to her role as office manager and stepmother, the wife was responsible for such homemaking services as

cooking, marketing, and cleaning, and was her husband's constant companion. They shopped together, even wearing the same clothes, and enjoyed "partying" together frequently. When the "partying" turned into a nightmare as a result of her excessive drinking and abuse of tranquilizers, the party and the marital relationship ended.

### The Wife's Depression and Alcoholism—Its Negative Impact on Her Contribution to the Practice

The thorny question that we are presented with is the extent to which the wife's psychiatric illness and addiction diminished her contribution to the marriage, and if so, its effect on her entitlement to a distributive share of the marital property. If we view her condition as self-imposed, we should also consider the husband's failure to lend her reasonable and appropriate support in mitigation. We should also factor into the equation the husband's awareness of her frailties at the time he entered into the marital partnership, a factor affecting his reasonable expectation of her contribution. Having married an "egg shell partner", can he reasonably have anticipated a greater contribution than he received? On the other hand, was she not reasonably entitled to expect some help and understanding from him?

The wife's psychiatrist diagnosed her illness as "panic disorder" plus major affective disorder, that is, major depression, anxiety, feelings of helplessness, and inadequacy. She used alcohol and antihistamines to anesthetize herself. The psychiatrist testified that she had been under his care since 1974 when she had suffered a nervous breakdown. In regard to the parties' early relationship, he testified that the husband had been rather supportive of her therapy, and she blossomed. However, later, the psychiatrist testified:

"I was getting reports back from [the wife] of things that made me uncomfortable; valium being supplied by him more than I was prescribing, demerol or whatever. It was not very constructive, you know, for a patient this fragile * * *

"[The husband] seemed to be having mixed feelings or confusion, and I suggested, or gave him the name of somebody that he could see to help him. [While alcohol was] part of the 'social milieu' they had together * * * with somebody like her [i]t just shouldn't be".

In the doctor's opinion, during therapy, the wife accurately reported events in her life.

Notwithstanding the husband's sophisticated medical training as well as his intimate premarital relationship with the wife (when he became well aware of her problems), and his direct communication with her psychiatrist, the husband's response to her illness was not helpful. Other than directing local liquor stores not to sell her liquor, he made no constructive effort to help her. He persisted in socially drinking in her presence, notwithstanding her condition and her susceptibility to temptation. He admitted that he purchased drugs (valium and demerol) wholesale because, as he stated, that way he saved money, although he was aware that she would, on occasion, consume more drugs than prescribed for her. When her condition infuriated him, he admittedly lost his temper and slapped her. "I lost my temper and slapped her because she had the audacity to drink when her mother and [my] children were coming. I just couldn't understand". In short, he failed to offer constructive support desperately needed by the marital partner whose very life was threatened by her increasing illness. It was not until the final termination of the relationship, when the wife sought help for herself and entered a rehabilitation center, that she obtained appropriate care.

### Duration of the Marriage; Health of the Parties

While this marriage of six and one half years was relatively short and childless, and the length of the marriage is a factor to be considered in determining the nontitled spouse's fair distribution of marital property, it is only one of numerous factors to be considered. In my view, it is outweighed by other factors. It is instructive that the Legislature linked the duration of the marriage to the parties' and age and health, suggesting that one may counterbalance or outweigh the other (see, Domestic Relations Law § 236 [B] [5] [d] [2]). This wife's ill health at the end of the marriage encompassed not only the psychological difficulties and alcohol-related symptoms from which she suffered prior to their marriage, but bleeding ulcers, cardiac disease, and migraine headaches, conditions developed during the stress of the marital disintergration. Her physical and mental disabilities contrast dramatically with the husband's good health.

The destruction of this marriage represented a major setback to the wife, while apparently leaving her husband's

future unscathed. When their relationship began, although she was recovering from a nervous breakdown, and had been under the care of her psychiatrist for five years, she hoped to return to school for further training, and to develop sufficient independence to leave her mother's home and to establish a home of her own. With the destruction of the marriage, her psychiatrist testified that she had suffered a second nervous breakdown. She must now start over, but older and with additional physical disabilities.

The years shared with her husband were particularly significant to this wife, since they brought her, at age 42, near to the running out of her biological clock, when the possibility of having her own children had become remote. As a result of her failed marriage, she is not only foreclosed from the likelihood of having a family of her own (which she had desperately hoped for), but must relinquish the loving relationship she developed with her stepchildren over the past nine and one-half years.

The wife's psychiatric condition and alcohol-related problems do not fall within the ambit of fault, as defined by New York case law, which has limited consideration of fault to highly egregious conduct *(see, Stevens v Stevens,* 107 AD2d 987; *Pacifico v Pacifico,* 101 AD2d 709; *McMahan v McMahan,* 100 AD2d 826; *Blickstein v Blickstein,* 99 AD2d 287). Nor do her problems fall within the parameters of conduct deemed a wasteful dissipation of marital assets or economic fault *(Mahon v Mahon,* 129 AD2d 684; *Griffin v Griffin,* 115 AD2d 587; *Barnes v Barnes,* 106 AD2d 535). Indeed, were we inclined to view her alcoholic conduct as a self-imposed condition, and thus a factor deemed "just and proper" for consideration (Domestic Relations Law § 236 [B] [5] [d] [13]), I would urge that the husband's failure to provide the wife with a reasonable degree of support should serve to counterbalance her conduct.

*Income and Property: Future Financial Circumstances*

The record makes clear the obvious disparity between the parties' income and assets and future financial circumstances which are significant factors to be considered in determining equitable distribution to the nontitled spouse.

*Conclusion*

From my perspective, this wife should receive 50% of the

parties' marital property. Her contribution to the marriage was substantial not only objectively, but subjectively, in that it represented the totality of her capacity to contribute to it in every sense. Moreover, although that contribution was unquestionably affected by her psychological and alcohol-related problems, her husband had been alerted to these conditions long prior to the marriage and could reasonably have anticipated her limitations. He, on the other hand, while providing material contributions, gave far less emotional support than she might reasonably have anticipated. Thus, the wife's contributions were different, but, depending upon one's perspective, not necessarily less valuable than the husband's.

At age 40, in good health, the father of two children, looking forward to a booming professional practice and financial success, the husband's future is rosy. At age 42, suffering major physical and psychological difficulties, childless, with no more than a high school degree and limited work experience, the wife's future is at best uncertain. Given the fact that the marital "pot" is limited in size by the limited duration of this marriage, and in consideration, *inter alia,* the above noted factors, I would award the wife 50% of the periodontal practice which would result in a total distributive award to her of $158,000 as compared to the trial court's award of approximately $145,000.