■ RUTH SEMANS, Respondent, v BRUCE SEMANS, Appellant. [605 NYS2d 510] —Yesawich Jr., J. Appeal from a judgment of the Supreme Court (Tait, Jr., J.) ordering, *inter alia*, equitable distribution of the parties marital property, entered April 21, 1992 in Madison County, upon a decision of the court.

Throughout the parties' 25-year marriage, plaintiff worked primarily as homemaker and caretaker for the parties' three children, who are all now emancipated, while defendant built a successful career as an engineer, salesman and plant manager. When the divorce action was commenced in October 1990, defendant was earning a salary of approximately $100,000 per year, with a typical annual bonus of $20,000, and additional perquisites. In the fall of 1991, after the parties had separated, plaintiff—who during the marriage had worked sporadically at several part-time jobs and obtained a travel agent certificate—began a four-year course of study leading to a degree in nursing.

After finding that both parties had established adequate grounds for a divorce, Supreme Court undertook to distribute the marital property. In addition to making an approximately even division of the parties' tangible assets, the court granted plaintiff a distributive award of $130,000, as her share of the value of defendant's Master's degree in materials science, which was acquired during the marriage. Plaintiff was also awarded maintenance in the amount of $2,500 per month, to continue until death or remarriage. Defendant appeals from these two aspects of the judgment.

To justify a distributive award, representing one half of the value of defendant's Master's degree *(see, Di Caprio v Di Caprio,* 162 AD2d 944, 945, *lv denied* 77 NY2d 802; *McGowan v McGowan,* 142 AD2d 355, 358), there must be some evidence in the record from which a proper valuation of the degree may be derived.* Here, the opinion of the value of the Master's degree by plaintiff's expert was based on facts not in evidence, namely, an erroneous assumption that defendant had also done substantial course work toward a Master's degree in business administration (hereinafter MBA). Because of this factual deficiency, it was improper for the court to rely

---

* Moreover, such an award is only justified if the benefits of the educational attainment have not merged into a developed career *(see, McSparron v McSparron,* 190 AD2d 74, 80-81). Inasmuch as our decision reverses the distributive award, however, and thus eliminates the possibility of "double dipping"—which defendant suggests occurred when the court made its distributive award and awarded maintenance as well—we need not determine whether a merger in fact occurred.

on that opinion in arriving at a value *(see, Matter of Aetna Cas. & Sur. Co. v Barile,* 86 AD2d 362, 364).

Although plaintiff points to several isolated questions to which her expert answered that he had no earnings data for supervisory engineers who had completed MBA course work, and that his calculations as to value were based on completion of the Master's degree in materials science only, when the testimony is considered as a whole it is apparent that the expert's mistaken assumption infected a key portion of his analysis. Significantly, the expert readily acknowledged that if defendant had not, in fact, completed "substantial work" toward his MBA, the analysis would require modification. Furthermore, the expert expressly stated several times that the work which he believed defendant had performed toward his MBA—but which, the record establishes, was never undertaken—contributed to his ability to secure a supervisory position. The expert also admitted that it was the supervisory position, not the Master's degree itself, which enhanced defendant's earnings. The salaries which the expert compared to arrive at the value of the enhancement were those of a nonsupervisor with a Bachelor's degree and a supervisor with a Master's degree, and it was explained that there is no difference between pay levels of supervisors with and without the Master's degree.

In view of this testimony, it is unreasonable, we believe, to conclude that the expert's valuation of the Master's degree in materials science was not, to some extent, based on the unfounded assumption that defendant had completed considerable course work toward his MBA. As there was no other evidence in the record from which value might have been determined, plaintiff did not carry her burden of proof in this regard and we are constrained to reverse the judgment insofar as it grants plaintiff a distributive award *(see, Rosenberg v Rosenberg,* 155 AD2d 428, 430; *Bidwell v Bidwell,* 122 AD2d 364, 366-367).

As for maintenance, although we find a nondurational obligation appropriate in this case, there is merit in defendant's challenge to the amount awarded. Whenever possible, maintenance should be designed to provide temporary support while the recipient develops the skills or experience necessary to become self-sufficient; this may not always be feasible, however, particularly when an older recipient has been out of the work force for many years. In addition, the level of earning necessary to enable the recipient to become "self-supporting" must be gauged, to some extent, by reference to

the parties' preseparation standard of living and to the earning capacities of both parties (see, Domestic Relations Law § 236 [B] [6] [a] [3]; *Turner v Turner,* 145 AD2d 752, 753). These factors carry more weight in a marriage of long duration, especially when the recipient spouse has sacrificed his or her own career development, or has made substantial noneconomic contributions to the household or to the career of the payor (see, Domestic Relations Law § 236 [B] [6] [a] [2], [5], [8]; *Sperling v Sperling,* 165 AD2d 338, 343-344; *cf., Reingold v Reingold,* 143 AD2d 126, 127, *lv dismissed* 73 NY2d 851).

Here, although plaintiff has commendably embarked on a course of retraining which should enable her to earn a modest living, it is unlikely, in view of the late start plaintiff has made on her career, that she will ever be able to achieve a standard of living close to that which she enjoyed prior to the divorce. Defendant, on the other hand, continues to earn a handsome salary, made possible in part by plaintiff's contributions during the marriage. On this record, we do not find Supreme Court's award of indefinite maintenance to be an abuse of discretion (see, *Phillips v Phillips,* 182 AD2d 746, 747; *Wilkinson v Wilkinson,* 149 AD2d 842, 843). The amount ordered is, however, somewhat excessive, given the likelihood that plaintiff will rejoin the work force as a nurse, secretary— in 1990 her salary as a secretary was $9,000—or travel agent. Payments of $2,000 per month will better serve the primary goal of maintenance, which is to encourage rehabilitation and self-sufficiency to the extent possible, while still accounting for a large discrepancy in earning power between the parties.

Weiss, P. J., Crew III and Cardona, JJ., concur.

Mikoll, J. (concurring in part and dissenting in part). In deciding matters of fact such as the distribution of property pursuant to the equitable distribution scheme, the trial court's determinations should not be disturbed unless the court abuses its discretion (see, *Reina v Reina,* 153 AD2d 775, 777). The enhanced earning capacity of a spouse acquired during marriage is a proper subject of equitable distribution (see, Domestic Relations Law § 236 [B] [5] [d] [6], [9]). Supreme Court properly determined that defendant's Master's degree is marital property because it is an item of economic value that was acquired during the marriage (see, *O'Brien v O'Brien,* 66 NY2d 576). A reading of the record supports the court's finding that plaintiff is entitled to a distributive award of $130,000 for her contribution to defendant's acquisition of a Master's degree and the enhancement it produced as to his earning capacity.

The only evidence presented on the question was by plaintiff's expert, who testified that defendant's Master's degree is related to his being in a supervisory position and that defendant's earnings now are equal to 97% of the earning of the top decile group of the most highly regarded supervisors. The total value of the enhancement was put at $262,323.

The majority's conclusion that the supervisory position is responsible for defendant's enhanced earnings and not his Master's degree is not supported in the record. Jerry Minor, plaintiff's expert, opined that the additional educational attainment was definitive in permitting defendant to perform as a supervisory engineer rather than as a nonsupervisory engineer, and that the earning enhancement of those education attainments were reflected by the different pension earnings of a supervisory engineer over and above the earnings of a nonsupervisory engineer. Minor's conclusion is further buttressed by the tables of computation submitted in evidence which clearly indicate that it is the Master of Science degree and its implication to defendant's earning capacity which was being considered and not the Master of Business Administration degree.

The majority's conclusion that the expert's testimony was impermissibly flawed is based on a hypothetical question posed by defense counsel which assumed facts not in evidence. He asked the witness to assume that defendant had taken most of the courses needed to earn a Master in Business Administration degree. An opinion based on such a scenario is not viable as evidence because it is not based on the true state of the record. Notwithstanding the fact that plaintiff's counsel failed to object to its admission, Supreme Court could discount it entirely as not based on the evidence as it obviously did.

The further conclusion of the majority that defendant's Master's degree has not advanced his ability to earn more based on the expert's tables which indicate that supervisory personnel having a Master's or Bachelor's degree earn the same is flawed. Even if, for the sake of argument, we were to conclude that supervisory engineers with a Bachelor's degree earn as much as a supervisory engineer with an Master's degree, this does not affect the circumstances in the record. It is defendant's employment history and the effect of his educational attainments and experience that is of evidentiary consequence and not that of some hypothetical "other" supervisory engineer with a Bachelor's degree who may or may not exist.

I would thus affirm Supreme Court's award to plaintiff of a

distributive award of $130,000 for her significant contributions in defendant's attainment of his Master's degree.

Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as made a distributive award in favor of plaintiff; the amount of maintenance is decreased to $2,000 per month; and, as so modified, affirmed.