[688 NYS2d 77]

ROCHELLE GRUNFELD, Appellant-Respondent, v HAROLD M. GRUNFELD, Respondent-Appellant.

First Department, April 15, 1999

## APPEARANCES OF COUNSEL

*Franklin S. Bonem* of counsel (*Amy F. Sandgrund* on the brief; *Proskauer Rose, L. L. P.,* attorneys), for appellant-respondent.

*Stanley Plesent* of counsel (*Robert C. Klein* on the brief; *Squadron, Ellenoff, Plesent & Sheinfeld, L. L. P.*, attorneys), for respondent-appellant.

### OPINION OF THE COURT

SAXE, J.

Since the enactment of the Equitable Distribution Law (Domestic Relations Law § 236 [B]) and the subsequent holding of the Court of Appeals in *O'Brien v O'Brien* (66 NY2d 576), that professional licenses are marital property, our trial courts have struggled with the complications of distributing the value of a spouse's professional license and professional practice. One concern that arose almost immediately was how to distribute those two nontangible assets, as well as awarding maintenance, without directing double (or triple) payment out of the same assets. It is this concern, and the trial court's attempt to address it, that we primarily address on this appeal.

The term "double counting" is frequently used to refer to the use of the same stream of income to calculate the value of more than one asset (*see, Wadsworth v Wadsworth*, 219 AD2d 410, 414-415, citing Scheinkman, 1995 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:6, 1996 Supp Pamph, at 46). The slightly different term "double dipping" is sometimes used to refer to the court-ordered payment of more than one financial obligation from the same source (*see, e.g., Semans v Semans*, 199 AD2d 790, *lv denied* 83 NY2d 758; *Hartog v Hartog*, 194 AD2d 286, *mod* 85 NY2d 36). The possibility of both problems exists in cases such as this, where a spouse is a long-time partner in a law practice.

The potential for double counting arises because in determining the value of a spouse's interest in a law practice, we take into account not only the practice's tangible assets and liabilities, such as accounts receivable and inventory, but also the intangible value of the practice, that is, its "goodwill" (*see*, Scheinkman, New York Law of Domestic Relations § 14.23, at 458; Brandes and Weidman, Law and The Family, *The Valuing of Law Practices*, NYLJ, Nov. 22, 1994, at 3, col. 1). Goodwill is best understood as the amount a buyer would pay for the practice above and beyond the market value of its net tangible assets; it generally is considered to include such items as established customer base and business reputation (*see*, Cohen and Ciampi, *Goodwill, Though Intangible, Can Be Assigned Value*, NYLJ, Mar. 3, 1997, at S2, S8; Gara and Langstraat, *Property Valuation for Transfer Taxes, Art, Science or Arbitrary Decision?*, 12 Akron Tax J 125, 141 [1996]).

The value of goodwill is often determined, as it was in this case, by the "excess earnings" approach. To arrive at it, we subtract from the spouse's actual earnings (using a weighted average of past annual earnings) the "reasonable compensation" for a similar attorney, and then multiply the difference, i.e., the "excess earnings," by a factor, which, for these purposes, is usually between 1 and 3. This factor is called the capitalization rate. In applying a capitalization rate, what is being calculated is the present value of the *expected future stream of income* (*see*, Note, *Valuation Problems in the Appraisal Remedy*, 16 Cardozo L Rev 649, 658 [1994]).

The future stream of expected income, reduced to present value, is also the basis for determining the value of a professional license. That value is obtained by reducing to present value, after taxes, the enhanced earning capacity created by the license or degree during the lifetime of the licensee (*see*, *O'Brien v O'Brien*, *supra*, at 582; 2 McCahey, Valuation & Distribution of Marital Property § 30.03 [3], at 30-19-30-20; Scheinkman, New York Law of Domestic Relations § 14.25, at 465). Thus, to determine the value of a professional license, an expert will typically prepare a projection of the licensee's lifetime earnings; if there is already an earnings history, that projection will be founded upon the past earnings history (*see*, *McSparron v McSparron*, 87 NY2d 275, 286).

The specter of double recovery was first raised soon after the *O'Brien* decision held that licenses were marital assets available for equitable distribution: "Care must be taken in viewing the *O'Brien* decision where the licensed professional does engage in the practice of the profession. The difficulty is that there is the potentiality for a double, or even triple, recovery. In *O'Brien*, the husband had not engaged in a private practice; he was a surgical resident. Hence, the Court did not have to grapple with whether an award can be made for the license *and* for an interest in a professional practice. Nor, because the wife's request was for a property distribution, did the Court have to consider whether the licensed spouse's enhanced earning capacity was being tapped to value the license and tapped again in fixing a maintenance award." (Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:6, at 203.)

Although the potential for double counting was not actually present in *O'Brien*, the issue was squarely presented in *Marcus v Marcus* (137 AD2d 131). Unlike the *O'Brien* scenario, in *Marcus*, the husband, after obtaining his medical license, had

spent the following 30 years developing his psychiatric practice. The Second Department concluded that the plaintiff wife was not entitled to two separate awards for the husband's license and for his psychiatric practice, since under such circumstances the value of the professional license is subsumed in the value of the practice (*see, Marcus v Marcus, supra,* at 139); this ruling was thereafter referred to as the "merger doctrine." The Court explicitly recognized that in other circumstances the doctrine would not apply, such as where the licensed spouse's practice had not yet developed to its full potential, or where an ongoing practice is sold, with the intent to move and begin anew (*supra,* at 140).

Seven years after *Marcus* and the subsequent cases in which its merger doctrine was developed and refined (*see, e.g., Duffey v Duffey,* 198 AD2d 581; *Maher v Maher,* 196 AD2d 530), the Court of Appeals rejected the entire concept of the merger doctrine, holding that "[t]he merger doctrine should be discarded in favor of a commonsense approach that recognizes the ongoing independent vitality that a professional license may have and focuses solely on the problem of valuing that asset in a way that avoids duplicative awards" (*McSparron v McSparron,* 87 NY2d 275, 285, *supra*). It explained that "[e]ven after the licensee has had the time and opportunity to exploit the license, and to realize a portion of the enhanced earning potential it affords, the license itself retains some residual economic value, although in particular cases it may be nominal" (*supra,* at 285-286). The Court went on to warn that, "care must be taken to ensure that the monetary value assigned to the license does not overlap with the value assigned to other marital assets that are derived from the license such as the licensed spouse's professional practice. The courts must also be meticulous in guarding against duplication in the form of maintenance awards that are premised on earnings derived from professional licenses." (*McSparron v McSparron, supra,* at 286.)

In the matter now before us, the trial court made a valiant attempt to render a determination that complied with these warnings to avoid double payments. It properly rendered valuations of both defendant's law practice and his license to practice law. However, in its attempt to avoid "double dipping" the court inequitably diminished the wife's entitlement. For that reason, and others that follow, we modify the judgment in several respects.

The parties met at City College of New York in 1965, and were married on December 26, 1971. Plaintiff worked as an

elementary school teacher in the New York City public schools for eight years following her graduation from college, until shortly before the birth of the parties' first child in 1976. She is now 52 years of age. Defendant is a founder and managing partner of Grunfeld, Desiderio, Lebowitz & Silverman, a 26-attorney law firm specializing in customs law; he is 50 years old. The parties have two sons, now ages 22 and 17.

Turning first to the equitable distribution of defendant's law practice, we conclude that the adoption of a value as of the commencement date of the action was an appropriate exercise of the trial court's discretion. The practice was an active, ongoing business, which type of asset is generally valued as of the date of commencement (*see, McSparron v McSparron*, 87 NY2d 275, 287-288, *supra*; *Panasci v Panasci*, 187 AD2d 928, 929; *Heine v Heine*, 176 AD2d 77, 87, *lv denied* 80 NY2d 753). Under certain circumstances, a date-of-trial valuation of a business may be justified by the loss of the business's major client and resultant loss of the business's value during the pendency of the litigation (*see, e.g., LaBarre v LaBarre*, 251 AD2d 1008), or by other losses due to adverse forces outside the spouse's control (*see, Sagarin v Sagarin*, 251 AD2d 396). Here, however, given the nature of the law firm's practice, its loss of several clients in the years following commencement of this action was not the type of unusual postcommencement event as would necessarily have a substantial, long-lasting effect on its value.

As the trial court correctly reasoned, had the value of the practice increased following commencement of the action based upon a large, unexpected fee from a new client, defendant would have been justified in arguing that this type of postcommencement windfall should not be considered in valuing the practice. By the same token, the diminishment of the firm's income due to the loss of a client need not be considered in arriving at an appropriate valuation date. Nor did the asserted recent changes in the practice of customs law require a later valuation date.

Other than the choice of valuation date, there is no challenge to the method by which the court arrived at the value of defendant's interest in his law firm as of that date. It employed the previously mentioned capitalization of earnings approach to arrive at a value of $2,581,760 for defendant's interest in his law firm, of which 50% was awarded to plaintiff.

Nor is there a challenge to the methodology adopted by the trial court in arriving at a value for defendant's license to practice law. To arrive at this valuation, the court considered

and combined two components. First, it determined the value of the "bare license," that is, the value of the license in the hands of the average licensee, by calculating the difference between (1) the present value of the remaining average lifetime earnings of a law firm associate in 1992 who was admitted to the Bar in 1974, practicing law in a locality with a population of over one million, and (2) that of an employed white male in the same locality with a bachelor's degree. Based upon that difference, the court calculated the present value of the enhanced earnings resulting from the acquisition of a law degree by an average white male in a large city, to amount to $330,239. To this total the court applied a 50% "coverture fraction", to account for the portion of law school that defendant completed prior to the marriage.

The second component of the license taken into account by the court was the enhanced earning potential created by the license *in the hands of this particular licensee.* To avoid duplication, the court removed from consideration that portion of defendant's expected lifetime compensation that was already considered in calculating the goodwill portion of the value of defendant's share of the law practice. " '[T]o avoid a double count, the income used in determining the present value of the practice must be deducted from the calculation of future enhanced earning capacity' " (*Wadsworth v Wadsworth*, 219 AD2d 410, 414, *supra,* quoting Scheinkman, 1995 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:6, 1996 Supp Pamph, at 46).

The trial court had already used defendant's "excess earnings", i.e., his earnings beyond reasonable compensation of $294,860, to calculate the value of his interest in the practice. Thus, the court's calculation of the defendant's enhanced earning potential, for purposes of valuing his law license, was properly based on the difference between the remaining earnings of $294,860 per year and the median income of an average attorney in a law firm who was admitted to the Bar in 1974, that is, $94,021. The difference was projected forward to obtain a lifetime earnings figure, which was then tax-impacted, after which a mortality figure was applied, and finally the total was reduced to present value with a 3% "true interest" rate. This calculation brought the court to a figure of $1,486,000 for the second component of the license; it then reduced that figure by $104,030 (approximately 7%) to reflect the premarital separate property component of that figure, leaving the "license" contemplated by *McSparron* available for distribution as a marital asset worth $1,547,000.

Plaintiff does not challenge the value assigned to defendant's law license by the trial court, but instead, the failure of the court to award her any portion of the value of that license in its distributive award.

In declining to award plaintiff any share of defendant's license, the trial court was mindful of the warning in *McSparron* against "duplication in the form of maintenance awards that are premised on earnings derived from professional licenses" (87 NY2d, *supra,* at 286). Indeed, the trial court expressly relied upon the holding of the Fourth Department that " 'the court [is] obliged to reduce the value of the enhanced earnings by the amount awarded in maintenance' " (*Wadsworth v Wadsworth*, 219 AD2d 410, 415, *supra,* quoting Scheinkman, 1995 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:6, 1996 Supp Pamph, at 46). Specifically, the trial court remarked that, given the substantial maintenance and other distributions to plaintiff, including half of defendant's interest in his law practice, any additional distribution based upon the license would be duplicative.

For the following reasons, we conclude that this constituted error, unnecessarily creating an inequity.

It has been said that property distribution and maintenance should not be treated as two separate and discrete items, but rather should each be considered "with a view toward the other in an effort to arrive at a fully integrated and complete financial resolution that is best suited to the parties' particular financial situation" (*Mullin v Mullin*, 187 AD2d 913, 914, citing Scheinkman, 1987 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:36, 1992 Pocket Part, at 90). However, when considering the appropriate remedy to employ as between spousal maintenance and equitable distribution, we should keep in mind their two distinct purposes. Equitable distribution is the division of marital property that, having been acquired by either member of the "economic partnership" during the marriage, belongs to both spouses, regardless of who is in possession or holds title (*see, O'Brien v O'Brien*, 66 NY2d 576, 585, *supra*; Scheinkman, New York Law of Domestic Relations § 14.15, at 433). This distribution amounts to an entitlement in favor of the nontitled spouse to an appropriate share of property held by the other spouse, keeping in mind the contribution of the nontitled spouse (*see, McSparron v McSparron*, 87 NY2d, *supra,* at 282).

Maintenance, on the other hand, is merely a payment awarded in the discretion of the court to ensure the support of

the nonearner spouse, keeping in mind, to the extent possible and appropriate, the standard of living enjoyed during the marriage (Domestic Relations Law § 236 [B] [6]; *Hartog v Hartog*, 85 NY2d 36, *supra*). The right to receive maintenance, and the responsibility to pay it, is conditioned upon many events: it ends with the death of either spouse, or the remarriage of the recipient (Domestic Relations Law § 236 [B] [1] [a]). In contrast, in the event of the death of either party, any unpaid equitable distribution is the right or responsibility of the estate of the deceased ex-spouse (*see, Peterson v Goldberg*, 180 AD2d 260, 263, *lv dismissed* 81 NY2d 835).

Moreover, the recipient of spousal maintenance bears the obligation to pay taxes on that income (unless provision is made to the contrary), whereas receipt of a distributive award is not considered income for taxation purposes (*see, Cohen v Cohen*, 184 AD2d 347, 348, citing Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:9, at 223). Since the dollar value assigned to defendant's law license was computed based upon projected after-tax earnings, a distribution of that asset would already have been tax-impacted. To substitute an award of maintenance for a distribution of that asset, which maintenance is then subject to income tax, is tantamount to making plaintiff the victim of double taxation.

" '[R]educ[ing] the value of the enhanced earnings by the amount awarded in maintenance' " (*Wadsworth v Wadsworth*, *supra*, 219 AD2d, at 415), is not the only way to avoid double dipping. Another viable option is for the court to grant a distributive award based upon the enhanced earnings, and then adjust the payor's other obligations accordingly (*see, Seeman v Seeman*, 251 AD2d 487, 488).

We conclude that plaintiff is therefore entitled to be awarded an appropriate share—here, 50%—of that part of defendant's law license earned during the marriage. The distributive award is therefore increased by $773,500, which, like the portion of the distributive award attributable to defendant's law practice, shall be paid out by means of the continuing annual installment payments of $250,000.

Nor does this additional award do away with any and all needs of plaintiff for maintenance. An award of maintenance may still be warranted even where a nonearning spouse has been awarded an appropriate part of the value of defendant's future earnings in the context of equitable distribution. The court must consider, in particular, the marital standard of liv-

ing, the extent of the estate possessed by each party, and the extent of the earner's remaining stream of actual and potential future income, after deducting the sums already subject to court order.

In the matter before us, defendant's future earnings are expected to exceed $1 million yearly, and he is possessed of other resources, the income from which could provide an additional source for at least a portion of the maintenance: a substantial stock portfolio, the proceeds of successful litigation against his former law partner, and limited partnership interests. It must also be recalled that the distributive award, payable in installments, will not be completely in plaintiff's possession for years to come. Clearly, an award of maintenance is called for.

Along these lines, it must be noted that while the trial court awarded plaintiff an award of maintenance in the appropriate sum of $15,000 per month, it then reduced that amount to $8,500 per month following the contemplated sale of the marital residence. This reduction of maintenance at that point in time is not justifiable. It cannot be accounted for by termination of the monthly carrying costs of the marital residence, which in any case were only approximately $4,000 per month. Nor can the decrease be accounted for by the reduction in plaintiff's housing costs following sale of the marital residence, since the cost of replacement housing can be expected to be commensurate with the carrying costs on the residence—in this regard, it is noteworthy that the defendant's net worth statement indicated that he paid $6,100 per month on his housing costs following the parties' separation. Furthermore, the court could not properly assume that plaintiff could use her share of the net proceeds of the sale of the residence to acquire alternative housing and thereby defray some of her support needs, since the trial court directed that plaintiff's share of those net proceeds (which it estimated at $500,000) must be used to repay defendant for certain marital liabilities (plaintiff's share of which totaled $576,000). Lastly, to the extent the reduction was based upon the assumption that plaintiff would have received a substantial part of her distributive award by the time the house was sold, that assumption has proved false.

While plaintiff will receive an additional distributive award, when we take into account the amount of time it will take for plaintiff to gain possession of it, the award of lifetime maintenance to plaintiff shall initially remain as set, at $15,000 per month, with no reduction at the time the marital residence is

sold. However, in view of the income plaintiff can be expected to garner from the amounts she ultimately receives as a distributive award, maintenance shall be reduced to $8,500 per month beginning the month following the date when the distributive award has been paid in full.

That aspect of the decision declining to give retroactive effect to the maintenance award was a proper exercise of discretion, in view of the nature of the pendente lite payments directed by the court as well as the payments voluntarily made by defendant.

■ We reject the claim raised by plaintiff that defendant is chargeable with wasteful dissipation of assets due to his trading in commodities and securities during the marriage. The trial court correctly declined to award to the wife the value of marital assets no longer in existence based upon the losses that resulted from that trading. As the Trial Judge cogently explained, defendant's original allocation of risk capital was reasonable, as was his initial increase of risk capital by the amount of his trading profits. Furthermore, the record demonstrated that when he entered into the now-challenged transactions, he had a good-faith belief in the profitability of this type of aggressive short-term trading. Moreover, the expert testimony by which plaintiff challenged the reasonableness of defendant's investments concerned only defendant's commodities trading, for which his final net loss came to only $350,000. He lost far greater sums in the more standard investment area of equities trading, and plaintiff offered no expert analysis directed at the reasonableness of those investment decisions.

Consequently, the tax liabilities and loan repayment liabilities caused by those losses were properly treated as marital debt, just as any profits derived in the process were marital assets.

As to defendant's claim of error regarding a securities account attributable to postseparation earnings, the trial court properly disallowed this adjustment, since defendant failed to offer at trial evidence as to the amount of postcommencement earnings added to the account.

Finally, plaintiff is entitled to interest on the unpaid balance of the distributive award, which the trial court properly determined should be paid in installments (see, Selinger v Selinger, 232 AD2d 471, 473, lv dismissed 90 NY2d 842; Maharam v Maharam, 245 AD2d 94).

We have considered the parties' other arguments and find no basis to disturb the trial court's determination with respect to the balance of the judgment.

Accordingly, the resettled judgment of the Supreme Court, New York County (Lewis Friedman, J.), entered June 18, 1997, *inter alia*, equitably distributing the parties' property, should be modified, on the law and the facts, (1) to add to the sixteenth decretal paragraph awarding plaintiff a distributive share of the value of defendant's interest in his law firm, a provision awarding plaintiff one half the value of defendant's license to practice law, i.e., $773,500, to be added to her distributive award, payable by the continued annual payments of $250,000 ordered therein; (2) to delete the provision of the third decretal paragraph reducing maintenance following sale of the marital residence, and substitute therefor a provision reducing maintenance to $8,500 per month beginning the month following full payment of the distributive award; and (3) to award plaintiff interest on the unpaid balance of the distributive award at the statutory rate; and as so modified, affirmed, without costs. Cross appeals from judgment, same court and Justice, entered December 23, 1996, should be dismissed, without costs, as superseded by the cross appeals from the resettled judgment.

NARDELLI, J. P., WILLIAMS and TOM, JJ., concur.

Resettled judgment, Supreme Court, New York County, entered June 18, 1997, modified, on the law and the facts, (1) to add to the sixteenth decretal paragraph awarding plaintiff a distributive share of the value of defendant's interest in his law firm, a provision awarding plaintiff one half the value of defendant's license to practice law, i.e., $773,500, to be added to her distributive award, payable by the continued annual payments of $250,000 ordered therein; (2) to delete the provision of the third decretal paragraph reducing maintenance following sale of the marital residence, and substitute therefor a provision reducing maintenance to $8,500 per month beginning the month following full payment of the distributive award; and (3) to award plaintiff interest on the unpaid balance of the distributive award at the statutory rate; and as so modified, affirmed, without costs. Cross appeals from judgment, same court, entered December 23, 1996, dismissed, without costs, as superseded by the cross appeals from the resettled judgment.