**In re Timothy S. JARRELL, Debtor.**

**Rosenman & Colin LLP, Plaintiff,**

**v.**

**Timothy S. Jarrell, Defendant.**

**Bankruptcy No. 99–11619(SMB).
Adversary No. 00/8107A.**

United States Bankruptcy Court,
S.D. New York.

June 27, 2000.

---

**1.** Notices mailed by regular mail and not returned will be deemed to have been received two days after mailed.

Rosenman & Colin LLP, New York City, Bernard E. Clair, of counsel, plaintiff pro se.

Tracy L. Klestadt & Associates, New York City, Tracy L. Klestadt, of counsel, for defendant.

## MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

STUART M. BERNSTEIN, Chief Judge.

The issue before the Court concerns the dischargeability of counsel fees awarded in

connection with a divorce action. The plaintiff, counsel for the debtor's former spouse, has moved for summary judgment, and although the debtor has not made his own motion, he asks me to search the record and award him summary judgment instead. For the reasons discussed, the plaintiff's motion is granted.

## BACKGROUND

The undisputed facts are reflected in the parties' respective statements of undisputed facts and the contents of the relevant state court decisions and orders submitted by the plaintiff as exhibits to its motion. Anne W. Jarrell ("Anne"), then the wife of the defendant, Timothy S. Jarrell ("Timothy"), retained the plaintiff in 1998 to prosecute a divorce action. The plaintiff commenced the action in the state supreme court, New York county, and on February 4, 1999, Judge Tolub issued a *pendente lite* order awarding Anne $7,500.00 in interim attorneys' fees.[1] The award was based on the court's finding that Anne personally lacked sufficient funds to pay her lawyer without depleting her assets.

The state court tried the divorce action on April 14, April 16, and April 22, 1999. In his decision dated July 9, 1999 ("July Decision"), Judge Tolub granted a divorce to Anne, and addressed various custody, property and support issues. Finally, he awarded Anne an additional $15,000.00 in attorneys' fees, and denied Timothy's motion to vacate the balance of the unpaid balance of the *pendente lite* award. After further post-trial motion practice, and on December 16, 1999, the state court signed the Judgment of Divorce. The judgment, *inter alia*, awarded Anne $28,487.88, inclusive of the $3,750.00 balance of the *pendente lite* attorneys' fees, and also directed Timothy to pay the plaintiff $15,000.00 as attorney's fees.[2]

Following bankruptcy, the plaintiff commenced this adversary proceeding for a determination that the counsel fee award is not dischargeable. Timothy concedes that the unpaid portion of the *pendente lite* award is not dischargeable, but argues that the $15,000.00 is.

## DISCUSSION

### A. The Standard For Granting Summary Judgment

Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding by Fed. R.Bankr.P. 7056, governs summary judgment motions. Initially, the moving party must show that no genuine material issues of fact exist, and that he is entitled to judgment as a matter of law. *Accord Cargill, Inc. v. Charles Kowsky Resources, Inc.*, 949 F.2d 51, 55 (2d Cir.1991). A court cannot decide disputed issues of fact, but instead, must assess whether any factual issues exist, and resolve any ambiguities or inferences against the moving party. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

If the movant carries this initial burden, the nonmoving party must set forth specific facts that show triable issues, and cannot rely on pleadings containing mere allegations or denials. Fed.R.Civ.P. 56(e). *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact, *Matsushita Elec. v. Zenith*, 475 U.S. at 586, 106 S.Ct. 1348; *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 146 (2d Cir.1993),

---

1. Timothy only paid half of this amount.

2. The divorce decree was signed six days after the petition date, and filed twelve days after that. Neither party has taken issue with the timing of the petition, or its possible effect on the financial and property issues adjusted by the divorce decree.

and may not rely solely on self-serving conclusory statements. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993); *Wyler v. U.S.,* 725 F.2d 156, 160 (2d Cir.1983).

Here, there is no separation agreement, and the question of dischargeability turns on the purpose and intent of the state court in making the counsel fee award. Obviously, the state court judge will not be called to testify. Further, the parties have not identified any other part of the state court record that is relevant to the determination.[3]

### B. Dischargeability Under 11 U.S.C. § 523(a)(5)

■ Section 523(a)(5) excepts from the general discharge granted under 11 U.S.C. § 727, a debt

> to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record....

Here, the counsel fee award was rendered in connection with the parties' divorce decree. Additionally, fees awarded directly to counsel rather than to the spouse may qualify as nondischargeable. *Pauley v. Spong (In re Spong),* 661 F.2d 6, 11 (2d Cir.1981). The only remaining question, therefore, is whether the award was in the nature of support.

■ For the answer, the bankruptcy court must look to the intent of the state court that rendered the award, and if the intent is unclear, to the function of the award in light of the relative circumstances of the parties.[4] *See Bonheur v. Bonheur (In re Bonheur),* 148 B.R. 379, 382 (Bankr.E.D.N.Y.1992). Ordinarily, bankruptcy courts look to several factors. These include:

> (1) whether the obligation terminates on death or remarriage; (2) the characterization of the decree; (3) whether payments appear to balance disparate income; (4) whether payments are made to a third party or directly to the spouse; (5) whether the obligation is payable in a lump sum or installments; (6) whether parties intended to create an obligation of support; (7) whether the assumption of the debt insures for the daily needs of the former spouse and any children; and (8) whether the assumption of the debt insures a home for the spouse and children.

*Friedman v. Silberfein (In re Silberfein),* 138 B.R. 778, 780 (Bankr.S.D.N.Y.1992); *see also* 4 Lawrence P. King et al. COLLIER ON BANKRUPTCY ¶ 523.11[6], at 523–82 to 523–87 (15th rev. ed.2000). While several of the factors go to the form of the award, the majority reflect a concern with the pressing financial needs of the spouse or children. Hence, awards

---

**3.** At oral argument, Anne's attorney stated that neither the trial transcripts nor anything else presented to the state court would shed light on the purpose or intent of the counsel fee award. Timothy's attorney initially stated that the trial transcript might, but could not identify any relevant part of the transcript.

**4.** Support awards and property settlements are interrelated. For example, under New York law, the amount of maintenance depends, in part, on the amount of the equitable distribution award, *see* N.Y.Dom.Rel. Law § 236B(6)(a)(1) (McKinney 1999) ("DRL"), and the amount of the equitable distribution award depends, in part, on the amount of the maintenance award. *See* DRL § 236B(5)(d)(5). The cross-reference is "de-signed to assure that the court fully integrates a complete financial resolution." Alan D. Sheinkman, *Practice Commentaries to § 236,* Book 14, New York Domestic Relations Law C236B:36, at 457 (McKinney 1999); *accord Mullin v. Mullin,* 187 A.D.2d 913, 590 N.Y.S.2d 921, 922 (N.Y.App.Div.1992). Nevertheless, the two types of awards serve distinct purposes. Equitable distribution reflects the view that a marriage is an economic partnership whose assets should be shared, based on the parties' relative contributions and without regard to legal title. Support, on the other hand, is designed to permit the nonearner spouse to maintain, to the extent possible, the standard of living enjoyed during the marriage. *Grunfeld v. Grunfeld,* 255 A.D.2d 12, 688 N.Y.S.2d 77, 84 (N.Y.App.Div.1999).

designed to meet these needs are more likely to constitute non-dischargeable support. In this case, both the function of the fee award and the intent of the state court overlap, and lead to the conclusion that the fee award is nondischargeable under § 523(a)(5).

■ Counsel fee awards in matrimonial courts are designed to level the playing field in the litigation. DRL § 237(a) authorizes the divorce court to instruct one spouse to pay directly the fees of the other spouse's counsel "to enable that spouse to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties." The court may make a *pendente lite* award when "required to enable the petitioning party to properly proceed." The statute is designed "to redress the economic disparity between the monied spouse and the non-monied spouse," *O'Shea v. O'Shea*, 93 N.Y.2d 187, 689 N.Y.S.2d 8, 711 N.E.2d 193, 195 (1999), focusing on the needier spouse's access to counsel who might otherwise decline to prosecute or defend a proceeding based on the spouse's inability to pay. Alan D. Sheinkman, *Practice Commentaries to § 237*, Book 14, New York Domestic Relations Law C237:1, at 5 (McKinney 1999).

■ A fee award under DRL § 237, therefore, implies a finding of financial need, and in this case, the record supports the finding.[5] At the time of the *pendente lite* award, Justice Tolub found that Anne lacked sufficient funds of her own to compensate counsel without depleting her assets. Timothy has never contended that the circumstances or Anne's financial needs changed. Indeed, the July Decision contained more specific findings highlight-

ing the economic disparity between the parties. In 1998, Timothy earned $268,001.00, and Anne earned $55,170.00, although the court concluded that she was capable of earning $69,000.00 annually. The various support-type awards, including child support, insurance, tuition, summer camp and related expenses reflected the same approximate 80%–20% split with Timothy bearing the larger portion.[6] In addition, Anne was awarded monthly spousal maintenance in the amount of $2,500.00 for seven years. Finally, Timothy was required to maintain a $500,000.00 life insurance policy, naming the Jarrells' two minor children as beneficiaries.

Accordingly, the record supports a determination of economic disparity and need compelling the conclusion that the counsel fee award is support.[7] *See Marcus, Ollman & Kommer v. Pierce*, 198 B.R. 665, 666 (S.D.N.Y.1996); *In re Silberfein*, 138 B.R. at 781. In summary judgment parlance, Anne has satisfied her burden of going forward, and shifted the burden to Timothy to show, at a minimum, disputed issues of fact. Timothy has not come forward with any new proof, and as noted, there is none to produce. Rather, Timothy argues that the same facts and record require not only the denial of Anne's motion, but also mandate summary judgment in his favor.

Timothy makes four arguments in favor of his position. First, the *pendente lite* order contained a specific finding of need but the final decision and award did not. Second, there is no finding of *prospective need*. Third, the court limited the final fee award as a result of Anne's "unreasonable expectations." According to Timothy, this implies that the fees were not substantially warranted, and the amount awarded was

---

5. Although the state court did not expressly refer to DRL § 237 in making the final fee award (as it did in the case of the *pendente lite* award), I have not been pointed to any other legal basis for it.

6. In contrast, the equitable distribution award reflected a 60%–40% split in Timothy's favor.

7. This conclusion is consistent with the prevailing view that counsel fees are essential to the needier spouse's ability to sue or defend a matrimonial action, and are consequently treated by most states an element of maintenance or support. *In re Spong*, 661 F.2d at 9.

not intended to be in the nature of support. Fourth, the *pendente lite* and final awards are found in separate paragraphs of the divorce judgment.

The first three points ignore the language and purpose of DRL § 237. The final award of counsel fees is not based on a prospective need, such as the prosecution or defense of a post-judgment appeal.[8] Rather, the availability of fees at the end of the case induces counsel to enter it at the beginning. Ultimately, the award is based upon the financial circumstances of the parties, and the requirements of the needier spouse, and not on any concept of sharing or contribution inherent in an equitable distribution award. Nevertheless, the court may modify the award in light of the other circumstances in the case, which may include the relative merit of the parties' positions. *DeCabrera v. Cabrera–Rosete,* 70 N.Y.2d 879, 524 N.Y.S.2d 176, 518 N.E.2d 1168, 1169 (1987). Here, the court reduced the award because Anne had "unreasonable expectations."[9] The reduction, therefore, was in the nature of a sanction but did not undercut the conclusion that the award was based on Anne's needs and the economic disparity in the Jarrells' respective financial positions.

Finally, the reason for the separation of the *pendente lite* and final fee awards in the divorce judgment, dated December 16, 1999, is obvious. After trial, Anne moved for the entry of judgment for the unpaid portions of the *pendente lite* order. The latter included spousal and child support as well as legal fees. The court granted her motion for a judgment in the sum of $28,487.88. The divorce decree incorporated a decretal paragraph in this amount (noting that the sum included the unpaid

portion of the *pendente lite* fee award) and a separate paragraph directing Timothy to pay $15,000.00 to Anne's attorneys. The separation of the two awards simply reflected the court's treatment of the entire unpaid portion of the *pendente lite* award as a single debt to be reduced to judgment. It does not imply anything beyond that.

## CONCLUSION

Based upon the foregoing, the plaintiff's motion for summary judgment is granted. Settle judgment on notice.

So ordered.

---

8. Ongoing needs are addressed by a *pendente lite* award.

9. In her application for *pendente lite* maintenance, Anne had insisted on temporary support in the annualized amount of approximately $175,000.00. This was to be paid from Timothy's pre-tax earnings which totaled $266,000.00. Justice Tolub described the demand as "somewhat unrealistic." He

also found, in his November 22, 1999 post-trial decision, that Anne had forfeited her right to an equal share of the marital assets "because of the behavior of the plaintiff in the four years preceding the parties' separation," and gave Timothy a further credit against future payments because "plaintiff's overspending by overborrowing cannot be rewarded."