■ REGINALD HALABY, Respondent, v CLAUDETTE HALABY, Appellant. [734 NYS2d 271] —Peters, J. Appeal from a judgment of the Supreme Court (Dawson, J.), ordering, *inter alia*, equitable distribution of the parties' marital property, entered June 26, 2000 in Essex County, upon a decision of the court.

In July 1998, plaintiff commenced this action for divorce, prompting defendant's answer and counterclaim. When plaintiff's request for an adjournment was denied, counsel appeared on his behalf and a one-day nonjury trial was held in June 1999. Supreme Court dismissed plaintiff's complaint, severed the counterclaim and dismissed plaintiff's reply thereto. Proceeding as a default in answering the counterclaim and receiving testimony to establish grounds for the divorce, an inquest was held to address issues of equitable distribution, maintenance, and the custody and child support for their one unemancipated child.

Defendant testified that although they were married on August 3, 1996, they lived separately as she pursued her Bachelor's degree and he completed his Ph.D. in biology. In May 1997, plaintiff applied for and was accepted to a postdoctoral fellowship at the Adirondack Biomedical Research Institu-

tion located in the Village of Lake Placid, Essex County. The parties relocated to Lake Placid in the summer of 1997 where defendant maintained the marital home and plaintiff completed his fellowship. In July 1998, they separated and plaintiff relocated to New Jersey to accept a teaching position at Montclair State University, while defendant moved to New York City. The following September, defendant returned to college full time, incurring substantial child care expenses. She anticipated that those expenses would continue while she worked full time in the upcoming summer and upon her hopeful entry into either a Master's or Ph.D. program thereafter.

Concerning equitable distribution, James Abbott, a certified public accountant and certified valuation analyst, testified for defendant regarding the present value of plaintiff's doctoral degree, as well as his postdoctoral fellowship. Abbott testified that an individual with a Ph.D. in biology statistically earns more than one with a Master's degree. For the purposes of calculating the value of plaintiff's degree, Abbott treated the fellowship as an extension of the Ph.D. program and asserted that the fellowship enhanced his earning capacity. After Abbott further detailed the methodology he employed, Supreme Court accepted his expert report into evidence over objection.

Supreme Court, finding sufficient grounds for divorce and resolving issues of custody and visitation, calculated child support under the Child Support Standards Act (see, Domestic Relations Law § 240 [1-b] [hereinafter CSSA]) and made appropriate provisions for medical, dental and eye care expenses not covered by insurance. Concerning the equitable distribution of the parties' marital property, the court found, inter alia, that while plaintiff's Ph.D. degree was marital property within the meaning of Domestic Relations Law § 236 (B) (1) (c), defendant was not entitled to an equitable portion thereof since she had not made any contributions to the attainment of that degree. In so finding, the court rejected Abbott's testimony that the postdoctoral fellowship was an extension of the degree program to which defendant would be entitled an equitable share due to her contribution as "wife, mother, and homemaker" during the fellowship period. With no proffered evidence that the completion of the fellowship was required to teach biology or had, in some manner, enhanced plaintiff's earning capacity by securing the teaching position he now holds, the court rejected Abbott's testimony. Upon appeal, defendant does not challenge Supreme Court's determination that she is not entitled to an equitable portion of plaintiff's Ph.D. degree. Instead, she contends that plaintiff's postdoctoral fellowship enhanced his

earning potential and, therefore, should be deemed marital property to which she is due her equitable share.

Domestic Relations Law defines marital property as "all property acquired by either or both spouses during the marriage and before execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held" (Domestic Relations Law § 236 [B] [1] [c]; *see*, Domestic Relations Law § 236 [B] [5] [b], [c]). As the Court of Appeals guided, "an interest in a profession or professional career potential is marital property which may be represented by direct or indirect contributions of the non-title-holding spouse, including financial contributions and nonfinancial contributions made by caring for the home and family" (*O'Brien v O'Brien*, 66 NY2d 576, 584). In assessing value, the courts look to "the enhanced earning capacity it affords its holder" (*id.*, at 586). Hence, in defining the term marital property, the Court of Appeals has urged us to interpret such term "*broadly* in order to give effect to the 'economic partnership' concept of the marriage relationship recognized in the statute" (*Price v Price*, 69 NY2d 8, 15 [emphasis in original]).

Applications of these principles have not been limited to instances where the enhanced earning potential of a spouse is linked solely to the attainment of a license and/or degree. Instead, the concept of marital property has been extended to those situations where a spouse's contributions and efforts led to an enhanced earning capacity in a particular career (*see*, *Murtha v Murtha*, 264 AD2d 552, 553, *lv dismissed* 95 NY2d 791 [certification as chartered financial analyst found to have enhanced earning capacity although not a prerequisite for employment and/or advancement]; *Hougie v Hougie*, 261 AD2d 161, 162 [enhanced earning capacity as investment banker was subject to equitable distribution whether or not such career required a license]; *Mitnick v Rosenthal*, 260 AD2d 238, 239, *lv dismissed* 94 NY2d 797, *lv denied* 95 NY2d 769 [fellowships found to be subject to equitable distribution upon evidence that they enhanced earning capacity]; *Elkus v Elkus*, 169 AD2d 134, 139-140, *lv dismissed* 79 NY2d 851 [value of career as opera singer and/or celebrity status was enhanced by the defendant's contributions and subject to equitable distribution]; *but see*, *McAlpine v McAlpine*, 176 AD2d 285, 286-287 [although a portion of the defendant's fellowship could be treated as marital property, no evidence that it enhanced his earning capacity]).

Hence, the preeminent issue here is whether there was sufficient evidence to conclude that the fellowship under consider-

ation increased plaintiff's earning capacity. Only then must we determine whether defendant's efforts and contributions thereto entitled her to an equitable portion thereof (*see, Gandhi v Gandhi,* 283 AD2d 782, 784; *Dugan v Dugan,* 238 AD2d 741, 744; *McAlpine v McAlpine, supra,* at 287). Upon our review, we agree that there was insufficient evidence supporting defendant's contention that this fellowship enhanced plaintiff's earning capacity. Abbott deemed the fellowship part of plaintiff's educational process for purpose of calculating the value of his Ph.D. degree and proceeded under the assumption that the fellowship made him eligible for his position with Montclair State University. Upon cross-examination, however, Abbott admitted that he neither contacted such institution nor anyone else to determine whether plaintiff's completion of the fellowship was instrumental in his hiring. As "there must be some evidence in the record from which a proper valuation of the degree may be derived" (*Semans v Semans,* 199 AD2d 790, *lv denied* 83 NY2d 758), we find the whole of Abbott's opinion to be based upon an unfounded assumption. With "the weight to be attributed to expert testimony * * * left to the trier of fact" (*Ciaffone v Ciaffone,* 228 AD2d 949, 951), Supreme Court properly exercised its discretion in rejecting Abbott's conclusion. No other evidence supports defendant's contention that the fellowship enhanced plaintiff's earning capacity or contributed in some way to the position he ultimately obtained with Montclair State University (*see, Dugan v Dugan, supra*; *West v West,* 213 AD2d 1025, *lv dismissed* 86 NY2d 885; *Semans v Semans, supra*; *McAlpine v McAlpine, supra*).

Next, defendant correctly contends that she was entitled to a separate award for reasonable child care expenses (*see,* Domestic Relations Law § 240 [1-b] [c] [4]; *see also, Faber v Faber,* 206 AD2d 644, 646; *Koczaja v Koczaja,* 202 AD2d 849, 850). The record reflects that she was enrolled in college full time for the September 1998 school year and thereafter hoped to obtain full-time employment over the summer and return to school full time in the fall. Notwithstanding testimony that she incurred approximately $150 a week for child care expenses when previously attending college on a full-time basis, the record is inadequate for us to appropriately resolve the issue (*see, Nolan v Nolan,* 215 AD2d 795). For this reason, we remit this matter to Supreme Court for further proceedings to address the calculation of reasonable child care expenses under the CSSA.

Finally, we find no merit to defendant's contentions that Supreme Court erred by declining to award her an equitable

share of plaintiff's retirement pension. Defendant's sole proffer on the issue was a reference to plaintiff's financial disclosure form wherein he listed a retirement annuity which he acquired through the City University of New York in 1993 as a student; no proof was offered concerning contributions to this pension during the course of the marriage. Upon this basis, Supreme Court properly concluded that it was not marital property (*compare, Burgio v Burgio*, 278 AD2d 767, 768-769; *Morell v Morell*, 277 AD2d 780, 780-781).

Mercure, J. P., Spain, Carpinello and Rose, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as failed to award defendant reasonable child care expenses; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.