# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**325**
**CA 15-01011**
PRESENT: SMITH, J.P., CARNI, LINDLEY, CURRAN, AND TROUTMAN, JJ.

---

IN THE MATTER OF THE ESTATE OF ROBERT L.
WILSON, DECEASED.
-----------------------------------------
CHRISTINE M. WEAVER, EXECUTRIX OF THE          MEMORANDUM AND ORDER
ESTATE OF ROBERT L. WILSON, DECEASED,
PETITIONER-APPELLANT;

KATHLEEN MARY CAMPBELL, EXECUTRIX OF THE
ESTATE OF MARY K. WILSON, DECEASED,
CLAIMANT-RESPONDENT.

---

LEONARD G. TILNEY, JR., LOCKPORT, FOR PETITIONER-APPELLANT.

DAVID J. MANSOUR, NIAGARA FALLS, FOR CLAIMANT-RESPONDENT.

---

Appeal from an order of the Surrogate's Court, Niagara County (Sara S. Farkas, S.), entered January 14, 2015. The order determined the claim of Mary K. Wilson against the Estate of Robert L. Wilson, deceased, to be valid.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum: Mary K. Wilson (claimant), the former wife of Robert L. Wilson (decedent), submitted a claim against decedent's estate, seeking to enforce the terms of a property settlement and separation agreement that was incorporated but not merged into their judgment of divorce (hereafter, agreement). The pertinent clause of the agreement provides that decedent "agrees to pay to [claimant] the sum of One Thousand Four Hundred Dollars ($1,400) per month as and for a distributive award for a period of nine years from the date of signing of this Agreement or until such time as [decedent], for any reason, discontinues doing business as Cocktail Bob's Tavern, whichever comes first. In said event, either party may petition a Court of competent jurisdiction for maintenance as provided in Article VII herein." The agreement does not state what should happen to the payments upon the death of either party. The estate denied the claim and filed a petition in Surrogate's Court seeking judicial settlement of the claim, and the Surrogate, pursuant to the parties' stipulation, determined the matter without a hearing (*see generally* SCPA 1809). Petitioner, as executrix of decedent's estate, now appeals from an order in which the Surrogate upheld the claim.

Initially, we note that claimant passed away during the pendency

of this appeal, and respondent, the executrix of claimant's estate, has been substituted as the responding party on appeal.

Contrary to petitioner's contention, we conclude that the Surrogate properly upheld the claim. The validity of the claim depends on the interpretation of the agreement, and it is well settled that " '[a] matrimonial settlement is a contract subject to principles of contract interpretation . . . [, and] a court should interpret the contract in accordance with its plain and ordinary meaning' " (*Tallo v Tallo*, 120 AD3d 945, 946; *see Anderson v Anderson*, 120 AD3d 1559, 1560, *lv denied* 24 NY3d 913). A contract is ambiguous, however, when on its face it "is reasonably susceptible of more than one interpretation" (*Chimart Assoc. v Paul*, 66 NY2d 570, 573) and, in deciding whether a contract is ambiguous, the court " 'should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed' " (*Kass v Kass*, 91 NY2d 554, 566). Finally, "[i]t is well settled that, where a contract is ambiguous, its interpretation remains the exclusive function of the court unless determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence . . . On the other hand, [where, as here,] the equivocality must be resolved wholly without reference to extrinsic evidence[,] the issue is to be determined as a question of law for the court" (*P&B Capital Group, LLC v RAB Performance Recoveries, LLC*, 128 AD3d 1534, 1535 [internal quotation marks omitted]).

Contrary to the contention of both parties, the Surrogate properly concluded that the agreement is ambiguous because it is reasonably susceptible of more than one interpretation. Inasmuch as the clause at issue fixes an amount to be paid for a tangible marital asset, is contained in the part of the agreement titled "Equitable Distribution of Marital Property," and contains no provision terminating the payments upon the death of either party, it could be interpreted in accordance with respondent's position that it is part of equitable distribution. It is well settled that, "in the event of the death of either party, any unpaid equitable distribution is the right or responsibility of the estate of the deceased ex-spouse" (*Grunfeld v Grunfeld*, 255 AD2d 12, 20, *mod on other grounds* 94 NY2d 696; *see Cristando v Lozada*, 118 AD3d 846, 847, *lv denied* 24 NY3d 913). Conversely, the fact that the agreement provides that payments are to continue "until such time as [decedent], for any reason, discontinues doing business as Cocktail Bob's Tavern," and that claimant could then seek maintenance, could be interpreted in accordance with petitioner's position, i.e., that the parties intended the payments to be in lieu of maintenance, which would terminate upon the death of the payor (*see* Domestic Relations Law § 236 [B] [6] [c]; *Hartog v Hartog*, 85 NY2d 36, 50). We agree with petitioner that the Surrogate " 'may not by construction add . . . terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing' " (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475). Here, however, based on our interpretation of the agreement as a whole, we agree with the Surrogate that the payments are part of a distributive award and thus

must continue despite the demise of decedent (*cf. generally Matter of Riconda*, 90 NY2d 733, 738).

Entered:  April 29, 2016                                Frances E. Cafarell
                                                        Clerk of the Court