Lorne v Lorne (2023 NY Slip Op 02942)

Lorne v Lorne

2023 NY Slip Op 02942

Decided on June 01, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 01, 2023

Before: Moulton, J.P., González, Mendez, Rodriguez, JJ. 

Index No. 309048/16 Appeal No. 369 Case No. 2021-04512 

[*1]Simon M. Lorne, Plaintiff-Respondent-Appellant,
v
Ludmila Peresvetova Lorne, Defendant-Appellant-Respondent.

Law Office of J. Douglas Barics, Commack (J. Douglas Barics of counsel), for appellant-respondent.
Cohen Clair Lans Greifer & Simpson LLP, New York (Jad Greifer of counsel), for respondent-appellant.

Judgment, Supreme Court, New York County (Michael L. Katz, J.), entered May 26, 2021, to the extent appealed from as limited by the briefs, (1) awarding defendant wife $7,000 in monthly maintenance retroactive to October 18, 2016; (2) determining that plaintiff husband's Charles Schwab accounts ending in -2077, -2005, and -2479 were his separate property; (3) determining that property located at 162 Ken Rose Lane in Oregon (Ken Rose) was the husband's separate property; (4) determining that the husband's stock options and restricted units (RSU) in Teledyne Technologies should be valued as of date of commencement; (5) determining that the parties' marital estate should be distributed 60% to the husband and 40% to the wife; (6) awarding the husband a 100% credit for his payment of post-commencement carrying costs on 50 Madison Avenue; (7) authorizing the husband to make decisions in the ongoing litigation involving 50 Madison Avenue and to receive a credit for 60% of his related legal fees post-commencement; (8) crediting the wife 40% of transfers made by the husband of $420,000, $90,000, and $534,814; (9) and determining the wife's share of the husband's net deferred income based on taxes withheld, unanimously modified, on the law and the facts, to the extent of reducing the husband's "off the top" credit for his payment of post-commencement carrying costs on 50 Madison Avenue from 100% to 40%, vacating credits to the wife of $213,600 and $168,000, increasing the wife's credit of $36,000 to $60,000, increasing the wife's distributive share of the husband's deferred compensation award by $104,237.08, deleting any calculation of any credits to the husband for overpayment of maintenance, and otherwise affirmed, without costs. The Clerk is directed to enter an amended judgment accordingly.
Contrary to the wife's contention, the court's determination that the accounts held at Charles Schwab ending in -2077, -2005, and -2749 are the husband's separate property was not against the weight of the credible evidence (see Heine v Heine, 176 AD2d 77, 83-84 [1992], lv denied 80 NY2d 753 [1992]). Additionally, the court correctly determined that real property in Oregon purchased using funds from one of these accounts was also the husband's separate property.
We find no reason to disturb the trial court's determination that the husband's stock options and RSU in Teledyne Technologies are properly valued as of the commencement date. Generally, active assets are valued as of the commencement date while passive assets are valued closer to the date of trial, however this must be viewed as a helpful guidepost rather than a rigid rule (see McSparron v McSparron, 87 NY2d 275, 287-288 [1995]). The husband testified that he is a board member and Chairman of the Audit Committee at Teledyne, and his duties include attending meetings, keeping abreast of the industry, and acting as a conduit for information with audit partners. Notably, the husband elected to receive his compensation [*2]in stock options and RSUs, which could have been converted to cash at commencement. Under these circumstances, we find that the commencement date of valuation is appropriate (see Epstein v Epstein, 289 AD2d 78, 78 [1st Dept 2001]).
The court providently exercised its discretion in awarding the husband 60% of the marital estate, and the wife 40%. The parties met in their fifties and did not have children together. While she largely managed the parties' properties, the wife did not work outside the home. The wife also occasionally participated in the husband's business-related events, but there was some testimony that the wife's behavior at these events created friction with his associates. It is undisputed that while the instant action was pending the wife sent letters disparaging the husband to his employer and other professional contacts. Although the husband's income increased dramatically during the marriage, his highest earning years occurred in the three years preceding commencement of the action when the parties had effectively set up separate households in New York and Connecticut. Under these circumstances, we find that the court's division of marital assets was equitable (see Arvantides v Arvantides, 64 NY2d 1033, 1034 [1985]; McKnight v McKnight, 18 AD3d 288, 289 [1st Dept 2005]; Caffrey v Caffrey, 2 AD3d 309, 311 [1st Dept 2003]).
The court properly gave the husband, an attorney, ultimate decision-making authority, after consultation with the wife, over long running litigation involving the parties' apartment at 50 Madison Avenue. This limited authority did not turn the husband into a de facto receiver of the property (see CPLR 5106). The court also providently exercised its discretion in permitting the husband to receive 60% of legal fees he expends "off the top" when the apartment is sold. Since he is still responsible for paying the remaining 40% of the legal fees, we are not convinced by the wife's argument that he has no incentive to resolve the litigation. However, we agree with the wife that the husband, who is responsible for payment of the apartment's post-commencement carrying charges, is only entitled to an "off the top" credit of 40% for his payment of the wife's share of these charges (see McKay v Groesbeck, 117 AD3d 810, 811-812 [2d Dept 2014]).
Review of the record reveals that evidence supports the husband's claim that a $420,000 loan was made from his post-commencement earnings, and, therefore, the wife is not entitled to a credit. Similarly, there is no evidence that the husband acted in bad faith in loaning to his daughter, years before commencement of this action, a total of $534,814. Accordingly, the wife's assertion that she was entitled to a credit arising from these loan amounts for wasteful dissipation is without merit (see Mahoney-Buntzman v Buntzman, 12 NY3d 415, 420-421 [2009]; Grunfeld v Grunfeld, 255 AD2d 12, 22 [1st Dept 1999]). The record, however, is devoid of evidence that $90,000 in marital [*3]funds used to pay the annual rent on the husband's apartment shortly after commencement of this action was captured by the valuation of the parties' marital banks accounts, and, thus, the trial court properly awarded the wife a credit for what was effectively an advance on equitable distribution of $90,000 to the husband. However, the wife's credit should have been calculated as $60,000, not $36,000.
With respect to the court's calculation of the wife's distributive share of the husband's deferred compensation, the record supports the wife's claim that she is entitled to an additional $104,273.08 based on the actual taxes paid in association with this income, as reflected by the husband's income tax returns, rather than the taxes withheld from the payout.
The court providently exercised its discretion in awarding the wife monthly nontaxable maintenance of $7,000 for six years based on the statutory factors and the parties' pre-divorce standard of living (see Cohen v Cohen, 120 AD3d 1060, 1064 [1st Dept 2014], lv denied 24 NY3d 909 [2014]). No one factor is determinative, and we reject the wife's argument that she is entitled to significantly more maintenance simply based on the husband's income. We note, however, that the husband is not entitled to any credits for temporary maintenance payments that exceeded the permanent maintenance award as any difference is minimal due to the tax impact (see Wechsler v Wechsler, 58 AD3d 62, 84 [1st Dept 2008], appeal dismissed 12 NY3d 883 [2009]).
The husband's claim that the parties' homes in Beverly Hills, California, and Westport, Connecticut, should have been sold is not properly before this Court. During trial, the husband expressly consented to the wife buying out his interest in the Beverly Hills home at the appraised value and only expressed interest in selling or buying out the wife's interest in the Westport home if she did not want it. Moreover, these properties have already been transferred to the wife, who exercised her right to buy out the husband's 60% interest. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 1, 2023